Argued and submitted May 2, decision of the Court of Appeals reversed; judgment of the circuit court reversed, and case remanded to the circuit court with instructions July 27, 1995

## WINDSOR INSURANCE COMPANY,
a Georgia corporation,
*Respondent on Review,*

*v.*

## Michael and Donna JUDD,
individually, and as co-personal representatives of the Estate of Gordon O. Judd,
*Petitioners on Review.*

(CC 92-7-183; CA A78403; SC S41775)

898 P2d 761

Thomas J. Rastetter, Oregon City, argued the cause and filed the petition for petitioners on review.

Michael C. Mitchell, of Lehner, Mitchell, Rodrigues & Sears, Portland, argued the cause and filed the brief for respondent on review.

Charles Robinowitz, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this declaratory judgment action, Michael and Donna Judd (defendants) appealed a summary judgment in favor of Windsor Insurance Company (Windsor), which declared that Windsor was not obligated to provide underinsurance coverage to them. The Court of Appeals affirmed. *Windsor Ins. Co. v. Judd*, 130 Or App 558, 882 P2d 1135 (1994). For the reasons that follow, we reverse and remand to the trial court with instructions to enter summary judgment in favor of defendants.

The facts are undisputed. Defendants' son, Gordon Judd, was killed in a two-car collision while a passenger in a car driven by Jeffrey Manning. Manning was insured under a Safeco single-limit automobile insurance policy that provided liability coverage in the amount of $60,000 per person, subject to a limit of $60,000 per accident. As a result of the accident, multiple claims were made against Manning's Safeco policy. At the time of the accident, Gordon Judd was insured under his parents' policy with Windsor, which provided uninsured/underinsured motorist protection of $50,000 per person, and $100,000 per accident.[1] Because of the payment of multiple claims stemming from the same accident, defendants were able to recover only $32,000 under Manning's policy. They seek to recover from Windsor the difference between their recovery under Manning's policy and the $50,000 that they argue is available to them under their policy with Windsor. *See* ORS 742.502(2)(a) (underinsurance benefits are reduced by the amount recovered from other automobile liability insurance policies).

The Windsor policy's terms regarding uninsured/ underinsured motorist coverage include these:

> "We will pay damages, except punitive or exemplary damages, which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:
>
> "1. **Bodily injury** sustained by an **insured** and caused by an accident[.]

---

[1] That protection is greater than the minimum uninsured motorist coverage required by law. ORS 806.070.

"* * * * *

"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

"**We** will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

"* * * * *

"(3) '**Uninsured motor vehicle**' means a land motor vehicle or trailer of any type which is:

"* * * * *

"(b)    insured by a liability bond or policy at the time of the accident but its limit for liability is less than the limit of liability for this coverage. **Our** obligation is for the difference between the limit of **our** coverage and the limit of the lesser liability coverage paid to the **insured**.

"* * * * *

"Regardless of the number of **cars** or **utility trailers** to which this policy applies:

"(1)    the limit of bodily injury liability for Uninsured Motorists Coverage stated in the declarations as applicable to each person is the limit of **our** liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as a result of one accident.

"(2)    subject to the limit for each person the bodily injury liability for each accident is the maximum **we** will pay for all damages, including those for care or loss of services, due to **bodily injury** sustained by two or more persons in any one accident." (Bold in original.)

Windsor brought this action against defendants for declaratory relief, arguing that Manning was not an underinsured motorist as defined in its policy and in the parallel Oregon statutes and, therefore, that Windsor is not required to pay to defendants any underinsured motorist benefits. Defendants argued that the underinsurance provisions of Windsor's policy are triggered, because the $60,000 total liability insurance available under Manning's Safeco policy is less than the $100,000 "each accident" insurance available under defendants' Windsor policy. Accordingly, defendants asserted, they may collect benefits up to the $50,000 "each person" limit on Windsor's policy, offset by the amount that

they recovered under Safeco's policy. Both parties moved for summary judgment. The trial court granted Windsor's motion for summary judgment, and defendants appealed.

The Court of Appeals affirmed, stating:

"Resolution of the parties' dispute turns on a question of law, the interpretation of plaintiffs' insurance policy. In interpreting an insurance policy, our primary goal is to ascertain the intention of the parties, based on the terms and conditions expressed in the language of the policy. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). We first determine whether the language is ambiguous. Only if it is ambiguous, in the sense that there are at least two interpretations that are reasonable, 'after all other methods for resolving the dispute over the meaning of particular words fail,' do we resort to the rule of construction that the policy is to be construed against the insurer. 313 Or at 470-71." *Windsor*, 130 Or App at 562.

The court then looked at the specific wording of Windsor's policy and concluded that, "[u]nder the unambiguous terms of the policy, the $50,000 per person — not the $100,000 per accident — limits apply." *Id.* at 563. We allowed defendants' petition for review.

Defendants contend that the Court of Appeals erred in holding that $50,000 per person limits apply. They argue that, because Safeco's $60,000 per accident limits are less than Windsor's $100,000 per accident limits, Manning was an underinsured motorist. Defendants assert that the court's analysis failed to take into account the requirements of ORS 742.502(2)(a), *see* below, 321 Or at 385, that underinsurance coverage must cover damage caused by cars "insured for an amount that is less than the insured's uninsured motorist coverage." They also argue that one must look first to the coverage under the policies to determine whether underinsurance exists, and only then look to the limitations on the amount of benefits that any one person may recover under the liability limits in the underinsurance policy.

Windsor responds that defendants' proposed interpretation is arbitrary because, were the policies reversed, with defendants having Safeco's single-limit policy and Manning having Windsor's split-limit policy, defendants would

have no claim. Under Windsor's proposed construction, Manning was not underinsured, because his policy could have provided up to $60,000 for an individual injured in the accident, whereas defendants' underinsurance limitation on liability under these circumstances was only $50,000 per person. Windsor argues that the purpose of underinsured motorist coverage is simply to place the insured in the position that he or she would be in if the other policy at issue had the same liability limits; it does not, however, prevent the possibility that those liability limits will be exhausted by payment of other claims, and does not guarantee full compensation for injuries. Windsor argues that, because the Safeco policy's $60,000 limit exceeds the $50,000 "each person" limit in Windsor's policy, Manning was not underinsured for purposes of the underinsurance provisions of Windsor's policy.

■    On review of a summary judgment, we determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995). As noted, in this case the material facts are undisputed.

The issues of law involve the scope of the statutory provisions for uninsured motorist coverage, ORS 742.500 *et seq*, and the meaning of Windsor's insurance policy. We proceed to examine the statutory provisions to determine whether they require that Windsor provide underinsurance coverage under these circumstances. *See To v. State Farm Mutual Ins.*, 319 Or 93, 97, 873 P2d 1072 (1994) (when a provision of insurance contract is required by legislature, the intent of the legislature, rather than the intent of the parties to the contract, controls); *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 244-45, 855 P2d 626 (1993) (when a provision appears in the contract because required by legislature, the court must determine meaning intended by the legislature).

In interpreting a statute, this court's task is to determine the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

We first examine the text and context of the statutes in question. The context includes "other provisions of the same statute and other related statutes." *Id.* at 610-11.

ORS 742.500(1) provides:

" '*Uninsured motorist coverage' means coverage* within the terms and conditions specified in ORS 742.504 insuring the insured, the heirs or legal representative of the insured *for all sums which the insured or they shall be legally entitled to recover as damages* for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070." (Emphasis added.)

ORS 742.502(2)(a) provides:

"A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

Uninsured/underinsured motorist coverage, therefore, encompasses all sums that the insured is legally entitled to recover as damages, "within the terms and conditions specified in ORS 742.504." ORS 742.500(1). ORS 742.504(7)(a) provides:

"The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."

Thus, as defined in ORS 742.500(1), uninsured/underinsured motorist coverage is subject to the limits of liability terms found in ORS 742.504(7)(a), which include "each person" and "each accident" limits on liability. The text and context of ORS 742.504(7)(a), however, do not answer the question whether one's "uninsured motorist coverage" varies according to the circumstances of a particular accident, based on whether one or more insureds are injured in the accident, *i.e.*, whether the "each person" or the "each accident" limit on liability applies under the circumstances.

It is possible to construe the text and context of the relevant statutes to mean that the term "insured's uninsured motorist coverage" refers to the "each person" limit of liability that would govern the amount of benefits owed to any one insured making a claim under the policy. On the other hand, it also is possible to construe the text and context of the relevant statutes to mean that the term "insured's uninsured motorist coverage" in ORS 742.502(2)(a) refers to both the "each person" and the "each accident" limits contained in ORS 742.504(7)(a). Accordingly, the proper construction of those statutes is not clear from the text of ORS 742.502(2)(a), the definition of "uninsured motorist coverage" in ORS 742.500(1), or the limits on that definition found in ORS 742.504(7)(a).

Because the intent of the legislature is not clear from the text and context of the relevant statutes, we turn to the legislative history. *See PGE*, 317 Or at 611-12 (stating principle).

In 1981, ORS 742.502 (then codified as ORS 743.789) was amended by Senate Bill 31 to add the following new language:

> "Offers of uninsured motorist coverage larger than the amounts required by ORS chapter 486 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies.

"(3)   Underinsurance coverage shall be subject to [ORS 742.504]." Or Laws 1981, ch 586, § 1.

Before 1981, the statutory scheme, in essentially the same form, applied only to *un*insured motorist coverage. There was very little discussion of this amendment in the 1981 legislative session, and what little there was reveals nothing that sheds light directly on the question posed in this case. The legislative history does reveal, however, that the legislature intended the amendment to be remedial, to allow an insured more options for coverage than were then available under the *un*insured motorist scheme. *See, e.g.*, Senate Committee on Insurance, Banking and Retirement, January 23, 1981, Tape 6, Side A (comments in support of bill); House Committee on Business and Consumer Affairs, July 8, 1981, Tape 177, Side A (same). The legislative history also supports that the 1981 amendment was intended to provide the option of extra protection for an insured who was injured in an accident in which a tortfeasor's insurance had to be divided among multiple claimants, thus reducing the insured's recovery from the tortfeasor. *See* Senate Committee on Insurance, Banking and Retirement, January 23, 1981, Tape 6, Side A (comments by Tom Bessonette, Oregon Mutual Insurance, describing nature of amendment).

We conclude that the legislative history does not answer the question presented in this case. Because the text, context, and legislative history do not provide the answer in this case, we turn to "general maxims of statutory construction to aid in resolving the remaining uncertainty." *PGE*, 317 Or at 612. *See Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 158, 864 P2d 350 (1993) (when legislative history does not reveal intent of the legislature, the court attempts to determine how the legislature would have intended the statute to be applied had it considered the issue) *adhered to as modified on reconsideration*, 318 Or 327 (1994).

■   A purpose of the 1981 amendment was to give insureds more options to purchase enhanced protection from the acts of *under*insured motorists. Windsor argues that, although defendants' proposed construction of the statutes will result in coverage in *this* case, if applied universally, it will deny coverage to *other* insureds and, therefore, it is

unreasonable.[2] We find that argument unpersuasive because, although defendants' proposed construction might not necessarily be the most favorable construction for all insureds under all circumstances, the legislative intent behind the 1981 amendment was not to favor all insureds under all circumstances. Rather, as noted, it was to give insureds more options to purchase enhanced protection from the acts of *under*insured motorists.

■      Under defendants' proposed construction of the relevant statutes, Windsor's policy with $50,000/$100,000 limits provides greater protection than Safeco's single-limit $60,000 policy. The legislative history noted above indicates that the legislature was concerned in particular with situations in which a tortfeasor's total insurance coverage was insufficient to cover the damages of multiple victims. Under Windsor's proposed interpretation, an insured who buys a split-limit underinsurance policy, even one with a very high "each accident" limit, still would not be able to increase his or her protection from an underinsured tortfeasor who injures multiple victims in one accident (except, perhaps, under the very limited circumstance where several people insured under the same underinsurance policy were injured in the same accident by an underinsured tortfeasor).

■      We believe that defendants' proposed construction of the relevant statutes, which compares a tortfeasor's "each accident" liability limits with the insured's "each accident" underinsurance limits to determine whether the tortfeasor's automobile was "insured for an amount that is less than the insured's uninsured motorist coverage," more closely effectuates the intent of the legislature in enacting the 1981 amendments to ORS 742.502. We conclude, therefore, that, in order to make a determination under ORS 742.502(2)(a) as to whether a car "is insured in an amount that is less than the insured's uninsured motorist coverage," a court must consider the higher "each accident" limits in the car's split-limit policy.

---

[2] Windsor posits, for example, that if the policies in this case were reversed, and defendants had Safeco's $60,000 single-limit policy and Manning had Windsor's $50,000/$100,000 split-limit policy, then under defendants' proposed construction, Manning would not be underinsured even though only $50,000 would be available to defendants under the "each person" limitation in Manning's policy, whereas defendants' own underinsured motorist policy would have had a $60,000 per-person limit.

We proceed to apply this statutory construction to the present case. Under Windsor's policy, defendants' "uninsured motorist coverage" encompasses both a $50,000 "per person" and a $100,000 "per accident" limit on Windsor's liability. The question becomes whether Manning's car, which was insured under Safeco's single-limit policy with a $60,000 limitation on liability, is "insured for an amount that is less than the insured's uninsured motorist coverage." ORS 742.502(2)(a). Had Manning's car been insured under a policy with $50,000 per person and $100,000 per accident limits, $100,000 would have been available to the multiple victims of this accident. But, because of the lower limit on liability in Safeco's policy, only $60,000 was available to the multiple victims of this accident. We conclude, therefore, that Manning's car was "insured for an amount that is less than the insured's uninsured motorist coverage." ORS 742.502(2)(a).

Under the final sentence of ORS 742.502(2)(a), underinsurance benefits shall be equal to uninsured motorist coverage benefits "less the amount recovered from other automobile liability insurance policies." Thus, defendants are entitled to recover damages under the Windsor policy up to the $50,000 per person limit, less the amount recovered under Safeco's policy.

We conclude that the trial court and the Court of Appeals erred in holding that underinsurance coverage was not available under the Windsor policy in these circumstances. Even if the Court of Appeals correctly determined that the Windsor policy was unambiguous and that coverage was not available to defendants under the express terms of that policy, Windsor's policy is deemed reformed to incorporate the statutory requirements for underinsured motorist coverage. ORS 742.504. Because the statutes provide for underinsurance coverage under these circumstances, we conclude that the Windsor policy likewise provides for underinsurance motorist coverage.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court with instructions to enter summary judgment in favor of defendants.