Argued and submitted November 8, 1995, decision of the Court of Appeals and
judgment of the circuit court affirmed June 13, reconsideration denied
October 8, 1996

Mary Ruth VEGA
and Millard Vega,
*Respondents on Review,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation,
*Petitioner on Review.*

(CC 93C-12442; CA A84679; SC S42362)

918 P2d 95

Keith J. Bauer, of Parks, Bauer, Sime & Winkler, Salem, argued the cause for petitioner on review. With him on the brief was Billy M. Sime.

Willard E. Merkel, of Popick & Merkel, Portland, argued the cause and filed the brief for respondents on review.

Joel S. DeVore, of Luvaas, Cobb, Richards & Fraser, P.C., Eugene, filed a brief for *amici curiae* Guaranty National Insurance Company, Valley Insurance Company, and

Allstate Insurance Company. With him on the brief was Thomas W. Brown, of Cosgrave, Vergeer & Kester, Portland, for *amicus curiae* State Farm Mutual Automobile Insurance Company.

GILLETTE, J.

**GILLETTE, J.**

In this declaratory judgment action, plaintiffs, two insurance policyholders, obtained a circuit court judgment declaring that they were entitled to underinsured motorist benefits under an automobile insurance policy issued by defendant, their insurer. Defendant appealed, arguing, first, that the action was time-barred and, second, that, because plaintiffs had failed to comply with certain conditions of coverage set out in the policy, they were not entitled to collect underinsured motorist benefits. The Court of Appeals rejected those arguments and affirmed the judgment of the circuit court. *Vega v. Farmers Ins. Co.*, 134 Or App 372, 895 P2d 337 (1995).

Defendant petitioned this court for review. We allowed the petition to decide three questions relating to underinsured motorist (UIM) coverage: First, in an action by an insured to enforce an insurer's obligations under the UIM coverage portion of an insurance policy, does the statute of limitations begin to run with the occurrence of the accident that triggers eligibility for UIM coverage? Second, may an insurer require its insured to exhaust the limits of a third-party underinsured tortfeasor's insurance policy as a condition of UIM coverage? Finally, does a legislatively imposed UIM policy provision allowing insureds to collect from their insurer only the sums that they are "legally entitled to recover" from the underinsured tortfeasor preclude recovery when, at the time that they file their UIM claim, the insureds' tort action against the driver of the other car has been dismissed with prejudice?

The Court of Appeals answered each of those questions in the negative. We agree with the results reached by the Court of Appeals and, accordingly, affirm. However, we answer questions two and three on grounds different than those given by the Court of Appeals.

The facts are simple and undisputed. On June 15, 1987, Mary and Renaldo Vega ("plaintiffs") sustained bodily injuries when their automobile collided with a vehicle operated by Ray Gallucci. Two years later, on June 14, 1989, plaintiffs filed a negligence action against Gallucci, who was

insured for up to $50,000 per person and $100,000 per accident under a policy issued by Allstate Insurance Company. Gallucci died in May 1990. Although plaintiffs' attorney was informed of that fact almost immediately, he failed to amend plaintiffs' complaint within one year to name Gallucci's personal representative as defendant, as required by ORCP 34 B(2). Consequently, plaintiffs' complaint was dismissed with prejudice in October 1992.

Early in 1993, plaintiffs filed a claim under the UIM coverage provisions of an automobile insurance policy that they had purchased from defendant.[1] When defendant denied that claim, plaintiffs demanded arbitration, as provided in the policy. Defendant refused to arbitrate and, on August 23, 1993, plaintiffs filed the present action for declaratory relief.

Defendant moved to dismiss in two separate motions made pursuant to ORCP 21. The first motion asserted that plaintiffs' complaint was barred by the applicable statute of limitations. The second asserted that the complaint failed to state a claim, in that it alleged facts that conclusively established that plaintiffs were not entitled to UIM coverage under the policy. Defendant argued that plaintiffs failed to comply with policy provisions requiring (1) exhaustion of the responsible party's liability insurance and (2) legal entitlement to damages from the responsible party.

The parties stipulated that the above matters were the sole and dispositive issues in the case. The trial court granted summary judgment for plaintiffs. On appeal, the Court of Appeals affirmed, concluding that (1) the applicable six-year statute of limitations did not begin to run until defendant denied plaintiffs' claim; (2) defendant's exhaustion provision is inconsistent with ORS 742.504(7)(c) and is, therefore, unenforceable; and (3) the requirement that a UIM claimant be "legally entitled" to recover damages from the underinsured tortfeasor does not require that the claimant have a direct right of action against that tortfeasor at the time the claim for UIM coverage is made. *Vega*, 134 Or App at

---

[1] That policy contained UIM coverage limits of $100,000 per person and $300,000 per accident.

376-80. We consider the correctness of each of those conclusions in turn.

■ We begin with defendant's assertion that plaintiffs' action is time-barred. The parties' dispute does not concern the length of time within which a UIM claimant must file an action against his insurer. Both parties acknowledge the applicability of the six-year limitations period for contract actions under the rule stated in *North River Insur. v. Kowaleski*, 275 Or 531, 551 P2d 1286 (1976).[2] Rather, the dispute concerns the date when that six-year period began to run.

Defendant maintains that, in this case, the statute of limitations began to run more than six years before plaintiffs filed their claim, *viz.*, on the date of the underlying accident. In defendant's view, that is the date when the relevant "coverages and liabilities became fixed" and, consequently, is the date when plaintiffs' UIM claim accrued. Plaintiffs contend, on the other hand, that their claim did not accrue until defendant breached its contract to provide UIM insurance by denying their demand for coverage. They argue, therefore, that the statutory period commenced on the date of that denial—less than one year before the present action was filed. We agree with plaintiffs.

■ In previous opinions pertaining to uninsured motorist (UM) coverage, this court has stressed the fact that, despite the inherently derivative nature of claims for UM coverage, the liability of an insurer for failure to provide such coverage is based on its contract with the insured, not on the uninsured driver's negligent act. *Turlay v. Farmers Insurance Exch.*, 259 Or 612, 624, 488 P2d 406 (1971). The same reasoning applies to the UIM context.[3] Consequently, the fact

---

[2] In *North River*, the court held that, when an insurance policy provides uninsured coverage, but does not specify any particular time period within which an action to enforce such coverage must be filed, the six-year statute of limitations on contract actions, ORS 12.080(1), applies. 275 Or at 535. *See also Turlay v. Farmers Insurance Exch.*, 259 Or 612, 624, 488 P2d 406 (1971) (where limitations period specified in policy is unenforceable, six-year contract statute of limitations applies). Defendant included no limitations period as a term of this policy.

[3] We agree with the Court of Appeals that it is irrelevant whether plaintiffs' claims are characterized either as UM coverage that includes UIM coverage or as solely UIM coverage. *See* ORS 742.502(2)(a) ("Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from

that the *underinsured driver's* liability is "fixed" as of the date of the accident is irrelevant to any assessment of when an action accrues on the contract against a recalcitrant UIM insurer.

■ Because defendant's liability is contract-based, what *is* relevant is the date when defendant allegedly breached its contract with its insureds. That is so because, under well-established principles of contract law, a contract action cannot be maintained, and the statute of limitations does not begin to run, until the contract has been breached. *See Pierce v. Pierce*, 153 Or 248, 253, 56 P2d 336 (1936) (no action may be maintained on contract until party to the contract defaults); *see also Hollin v. Libby, McNeill & Libby*, 253 Or 8, 13, 452 P2d 555 (1969) (quoting 5 Williston on Contracts (rev ed) § 1317: "As soon as a party to a contract breaks any promise he has made, he is liable to an action.").

We see no reason to apply a different rule to contracts that provide UM/UIM insurance. We hold, therefore, that, unless the insurance policy provides otherwise, the statute of limitations for an action to enforce an insurer's contractual obligation to pay UM/UIM benefits begins to run when the insurer breaches the contract. Generally, that will occur when the insurer denies a claim for UM/UIM benefits, thereby refusing to honor a promise to pay such benefits.[4]

Defendant argues that such a holding effectively will eliminate the statute of limitations on an entire category of UIM and UM insurance actions, *viz.*, those that are brought under policies that do not include a contractual limitations period, thus allowing insureds to revive long-stale claims merely by making demand on their UM/UIM insurers. An

---

other automobile liability insurance policies."); *see also* ORS 742.504(4) (equating underinsurance coverage with uninsured coverage with respect to ORS 742.504).

[4] In so holding, we join the majority of state courts that have considered the issue. *See, e.g., Palmero v. Aetna Casualty & Surety Co.*, 606 A2d 797 (Me 1992); *Safeco Insurance Co. v. Barcom*, 112 Wash 2d 575, 773 P2d 56 (1989); *Alvarez v. American General Fire & Casualty Co.*, 757 SW2d 156 (Tex App 1988); *Norfleet v. Safeway Ins. Co.*, 144 Ill App 3d 838, 494 NE2d 720 (1986); *Spira v. American Standard Ins. Co.*, 361 NW2d 454 (Minn App 1985); *Yingling v. Phillips*, 65 Md App 451, 501 A2d 87 (1985); *Allstate Ins. Co. v. Altman*, 200 NJ Super 269, 491 A2d 59 (1984); *Allstate Ins. Co. v. Spinelli*, 443 A2d 1286 (Del Supr 1982); *Jacobs v. Detroit Auto. Inter-Insurance Exchange*, 107 Mich App 424, 309 NW2d 627 (1981) (all so holding).

answer to that argument is the one offered by the Court of Appeals in *Vega*: Insurers can protect themselves from that eventuality by including the legislatively authorized limitations period found at ORS 742.504(12) in their automobile insurance contracts. 134 Or App at 375-76 n 2.[5]

■ Having disposed of the statute of limitations question, we turn to the policy provisions that, in defendant's view, preclude recovery in this case. Defendant argues, first, that plaintiffs are excluded from UIM coverage under the following policy provision:

"Other Insurance:

"1. We will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability bonds or policies have been exhausted by payment of judgment or settlements.

"2. The amount of Uninsured Motorist Coverage we will pay under Additional Definitions 3b shall be reduced by the amount of any other **bodily injury** coverage available to any party held to be liable for the **accident**."

---

[5] ORS 742.504 provides:

"Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions:

"* * * * *

"(12) The parties to this coverage agree that no cause of action shall accrue to the insured under this coverage unless within two years from the date of the accident:

"(a) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction;

"(b) Agreement as to the amount due under the policy has been concluded; or

"(c) The insured or the insurer has formally instituted arbitration proceedings."

When read in isolation, ORS 742.504 appears to apply only to UM coverage. However, pursuant to ORS 742.502(4), it also is applicable to UIM insurance. ORS 742.502(4) provides:

"Underinsurance coverage shall be subject to ORS 742.504."

(Boldface in original.) Defendant points out that, because plaintiffs' action against Gallucci was dismissed with prejudice, plaintiffs have not, and cannot, comply with the exhaustion requirement under subsection 1.

Plaintiffs respond that "exhaustion" provisions such as defendant's are unenforceable, because they are contrary to the statutes governing UM/UIM coverage. In particular, plaintiffs argue that the provisions violate ORS 742.504, in that they are less favorable to them than the following provision set out at ORS 742.504(7)(c):

"Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:

"(A)   All sums *paid* on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy[.]"

(Emphasis added.)

Plaintiffs maintain that, under the above-quoted wording, the only legislatively authorized limitation on a claimant's entitlement to full recovery from UIM coverage is the amount actually "paid" by or on behalf of the tortfeasor. It follows, in plaintiffs' view, that defendant's exhaustion provision sets a limitation on the recovery available from their UIM coverage that is less favorable than the legislatively authorized limitation, because, under the subsequent provision, it allows defendant to reduce that recovery by the amount of insurance that is "available" under Gallucci's liability coverage, rather than by the amount actually paid from that coverage.[6] The Court of Appeals agreed with that view

---

[6] In a related vein, plaintiffs argue that the exhaustion provision is inconsistent with ORS 742.502(2)(a), which requires automobile insurers to offer prospective purchasers of liability insurance underinsured motorist coverage up to the policy's liability limits and which describes underinsurance benefits as:

"equal to uninsured motorist coverage benefits less the amount *recovered* from other automobile liability insurance policies."

(Emphasis added.) Again, plaintiffs assert that there is an inconsistency between defendant's requirement of recovery of the tortfeasor's policy limits and the

and invalidated the policy provision on that ground. *Vega*, 134 Or App at 378-79.

The parties in this case, as well as the Court of Appeals, have framed the issue in terms of a comparison between the challenged exhaustion provision and a single paragraph of ORS 742.504, *viz.*, paragraph (7)(c)(A). We reject that approach. For one thing, it is not immediately obvious that the favorableness of the two provisions can be compared easily. That is so because the contractual exhaustion provision is directed, at least facially, at a different subject than is ORS 742.504(7)(c)(A): The former pertains to whether an insured has a right to collect UIM benefits *at all*, while the latter pertains to the *amount* of UIM benefits that an insured is entitled to collect.

More importantly, ORS 742.504 itself appears to call for a different comparison. ORS 742.504 provides in part:

> "Every policy required to provide the *coverage* specified in ORS 742.502 shall provide uninsured motorist *coverage* which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions[.]"

(Emphasis added.) It is clear from that wording that the validity of a challenged UIM provision must be tested, not by a direct comparison between the challenged provision with an individual statutory provision but, instead, by a comparison between *coverage* offered by the policy containing the challenged provision and the *coverage* offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12).

Of course, in many cases, *i.e.*, those in which the challenged provision bears a clear relationship to one of the statutory provisions, that distinction is inconsequential: If a policy contains a challenged provision that is "less favorable to the insured" than one of the statutory provisions, it takes

---

statute's simple formula for computing UIM benefits—the amount payable, minus any amount actually recovered from other liability insurance policies.

no great leap of imagination to conclude that, at least in that respect, the coverage in the policy also is less favorable than the coverage in a policy comprised of the statutory provisions. But where the relationship between the challenged provision and the statutory provisions is less obvious, analyzing the validity of the challenged provision in the statutorily prescribed manner is, or at least may be, crucial.

■ We say "may be" because, although ORS 742.504 plainly calls for a policy-to-policy comparison of favorableness, it does not plainly indicate whether, in performing that comparison, the provisions at subsections (1) to (12) are to be viewed as a complete and comprehensive model policy, admitting to no additional terms, or merely as a list of minimum policy requirements, outside of which the insurer is free to use any other provision that does not interfere with the operation of subsections (1) to (12).

We are presented, then, with a question of statutory interpretation, a question that must be resolved through application of our traditional methodology. That methodology begins with an analysis of the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

As indicated, the text of ORS 742.504 does not, in itself, establish which of the foregoing meanings was intended. That uncertainty notwithstanding, however, certain contextual clues indicate that the legislature had the former meaning in mind. First and foremost of those clues is the fact that ORS 742.504 appears to incorporate by reference[7] the broad and mandatory notion of coverage set out at ORS 742.502.[8] In the absence of that reference, we might

---

[7] ORS 742.504 provides in part:

"Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage * * *."

[8] ORS 742.502(2)(a) provides in part:

"Uninsured motorist coverage larger than the amounts required by ORS 806.070 *shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage.*"

(Emphasis added.)

assume that the provisions at ORS 742.504(1) to (12) were superimposed on an empty field. But, in view of its reference to ORS 742.502, we read ORS 742.504 as declaring the particular ways in which that broadly stated coverage may be abridged.

Finally, the provisions to which ORS 742.504 refers do not read like a list of minimum policy requirements for the protection of the insured. In fact, the majority of the listed provisions extend *no* protection to the insured and clearly exist solely for the benefit of the *insurer. See, e.g.*, ORS 742.504(4)(a), (b) and (c) (exclusions from coverage); ORS 742.504(7)(b) and (c) (reductions to prevent double recovery); ORS 742.504(11) (right of subrogation). If applied *individually* to those pro-insurer provisions, a statutory requirement that coverage be "no less favorable" to the insured would be meaningless: It is difficult to conceive how coverage under those policy provisions *could* be less favorable to the insured. However, that statutory requirement makes perfect sense if subsections (1) to (12) are read as a comprehensive whole: A policy that contains an extraneous provision clearly can be less (or more) favorable to the insured than a model policy that consists entirely of the listed provisions.

The fact that many of the listed provisions primarily benefit the insurer, rather than the insured, has logical significance in one other respect. If ORS 742.504 protected insureds only in certain specified areas, and otherwise extended *general* permission to insurers to employ policy provisions that disfavor insureds, there would be no need to authorize expressly those *particular* unfavorable provisions. On the other hand, those pro-insurer provisions do serve an obvious legislative purpose if subsections (1) to (12) are read as a comprehensive bottom line: They are the *only* provisions that disfavor insureds that an insurer may include in a policy for UM/UIM coverage.

We think that it is clear from the foregoing contextual clues that, in enacting ORS 742.504, the legislature did not intend to leave insurers free to structure their policies as they pleased *outside* the subject matter represented by the provisions at subsections (1) to (12). Rather, we think that the contrary is true—that the legislature intended to provide

insurers with some measure of freedom *within* that subject matter, so long as any changes do not disfavor insureds. In short, we read ORS 742.504(1) to (12) as setting out a comprehensive model UM/UIM policy that may be varied only in the sense that terms that disfavor insureds may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added.

With that construction of ORS 742.504 in mind, we turn to the policy provisions at issue. The operative portion of the policy's exhaustion provision states that defendant will "pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgment or settlements." Clearly, that policy term is not identical to ORS 742.504(7)(c)(A) or to any other of the provisions authorized by ORS 742.504(1) to (12). Just as clearly, the policy term disfavors insureds more than ORS 742.504(7)(c)(A) does. The policy term authorizes the wholesale denial of coverage unless the limit of a tortfeasor's liability insurance has been exhausted. ORS 742.504(7)(c)(A) only requires that the insurer's insurance liability be reduced by any sums *actually paid* to the insured from another source.

It follows that, because the policy includes that provision, plaintiffs' policy represents a type of variation on the comprehensive model UM/UIM policy set out at ORS 742.504(1) to (12) that ORS 742.504 does not permit. Rather than excluding or softening an authorized term that disfavors insureds, or adding one that is neutral or that favors insureds, the policy adds a term that plainly disfavors insureds. Consequently, the exhaustion provision violates the "no less favorable" requirement at ORS 742.504.[9]

---

[9] Defendant argues that, whether or not its exhaustion provision is authorized by ORS 742.504, it is nevertheless clear, from the legislative history of ORS 742.502(2), that the legislature viewed exhaustion of the at-fault driver's liability insurance as a necessary precondition of UIM coverage. Even if we were free to consider that legislative history (and, given the absence of any ambiguity in the text and context of ORS 742.502(2), we are not, *PGE*, 317 Or at 611), nothing in it suggests that the legislature viewed exhaustion as a necessary precondition of UIM coverage.

*Amici* offer a different argument, also based on the legislative history of the UIM statute. They contend that the legislature designed the provisions set out under ORS 742.504 for UM coverage, and never intended that they apply to UIM coverage at all. Although *amici* acknowledge the *apparent* import of ORS

We conclude that, by including the challenged exhaustion provision in this automobile insurance policy, defendant has violated the requirement at ORS 742.504 that insurers provide "coverage which in each instance is no less favorable in any respect to the insured * * * than if the [provisions at ORS 742.504(1) to (12)] were set forth in the policy." The exhaustion provision is, consequently, unenforceable, and it cannot bar plaintiffs' recovery.

■ We turn to the final question posed by defendant in this case: Were plaintiffs barred from recovering UIM benefits by a legislatively authorized policy provision describing coverage in terms of sums that an insured is *"legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle"*? (Emphasis added.)[10] Defendant argues that the fact that the trial court dismissed with prejudice plaintiffs' claims against Gallucci establishes conclusively that plaintiffs are not "legally entitled" to recover damages from the operator of an uninsured (or, in this case, underinsured) vehicle. The trial court rejected that reasoning, and the Court of Appeals agreed, citing its decision in *Kalhar v. Transamerica Ins. Co.*, 129 Or App 38, 877 P2d 656, *rev den* 320 Or 360 (1994).

---

742.502(4), which provides that "underinsurance coverage shall be subject to ORS 742.504," they argue that the legislative history of that subsection establishes a much narrower intent. In that regard, *amici* note that ORS 742.502(4) was added at the suggestion of then-Senator Ted Kulongoski, whose only expressed concern was to make the arbitration process provided at ORS 742.504(10) applicable to UIM coverage. *Amici* conclude from that history that it never was the legislature's intention to make UIM coverage *as a whole* subject to the "no less favorable" requirements of ORS 742.504. We reject that argument. The text of ORS 742.502(4) is clear: It refers to ORS 742.504 in its entirety.

[10] The uninsured motorist provisions of the policy included the following clause:

"We will pay all sums which an **insured person** is *legally entitled to recover* as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person**."

(Boldface in original; emphasis added.) That provision substantially mirrors the language of the statutory policy language set out at ORS 742.504(1)(a):

"The insurer will pay all sums which the insured * * * shall be legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of such uninsured vehicle."

As already discussed, defendant was required by ORS 742.504 to provide UM/UIM coverage in terms that were "no less favorable" than the above provision.

■ In *Kalhar*, the Court of Appeals concluded that the phrase, "legally entitled to recover," when used in the context of uninsured motorist coverage, means only that the insured must be able to show fault and the extent of his or her damages. 129 Or App at 44. The court appears to have based that conclusion exclusively on general principles of insurance law,[11] without first considering what the *legislature* intended when it employed that phrase. That approach was erroneous: Because the phrase "legally entitled to recover" was included in the policy at issue pursuant to a statutory requirement (ORS 742.504(1)(a)), the intent of the legislature, rather than the intent of the parties, controls. *See Windsor Ins. Co. v. Judd*, 321 Or 379, 384, 898 P2d 761 (1995) (stating principle); *To v. State Farm Mutual Ins.*, 319 Or 93, 97, 873 P2d 1072 (1994) (same).

■ Thus, in order to resolve the issue now before us, we must engage in the analysis that *Kalhar* did not carry out. We must, in other words, interpret ORS 742.504(1)(a) to determine what the legislature intended when it required UM/UIM insurers to promise to "pay all sums which the insured * * * shall be legally entitled to recover" from the owner of an uninsured vehicle.

That analysis begins with the provision's text and context. *PGE*, 317 Or at 610. In and of itself, the text is enigmatic. The provision can be read to require coverage only when the insured is or would be able to obtain a judgment in his or her favor, *i.e.*, prove the requisite elements of a tort claim *and* overcome available defenses. At the same time, it also can be read as conveying a more liberal test of coverage, requiring only that the insured be able to prove the basic elements of a tort claim—fault and damages.

Nor are we able to determine from the statute's context which of those two meanings was intended. The term

---

[11] In particular, the Court of Appeals quoted an argument advanced by a leading commentator in the field of uninsured/underinsured motorist coverage. *See* 129 Or App at 44-45 (quoting Alan I. Widiss, 3A *Uninsured and Underinsured Motorist Insurance* § 34.2 at 31-35 (2d ed 1992)). The court also cited a number of cases from other jurisdictions as evidence that a majority of the states that had addressed the issue had defined the phrase in a similar manner.

"legally entitled to recover" appears to be specific to the UM/UIM context: It is not employed in any other, related statute. And, although the term is used elsewhere in the UM/UIM statute itself, none of those other references casts any light on its meaning in the present context.

Because we cannot determine the meaning of ORS 742.504(1)(a) from text and context alone, we turn to its legislative history for possible clarification. *PGE*, 317 Or at 611. Although that history spans three legislative sessions,[12] the available records of those three sessions do not contain a single specific mention by a member of the legislature about the purpose or effect of the wording that ultimately became ORS 742.504(1)(a). Thus, there is nothing in the legislative history that answers the question now before us.

Because the text, context, and legislative history do not provide a resolution, we must proceed to general maxims of statutory construction. *Windsor*, 321 Or at 387; *PGE*, 317 Or at 612. First and foremost, we must do our best to "determine how the legislature would have intended the statute to be applied had it considered the issue." *Westwood Homeowners Assn. v. Lane County*, 318 Or 146, 158, 864 P2d 350 (1993).

This court's past opinions have stated that the legislature's purpose in creating compulsory uninsured motorist coverage was to "provide[ ] protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists." *Peterson v. State Farm Ins. Co.*, 238 Or 106, 111-12, 393 P2d 651 (1964); *see also Turlay*, 259 Or at 612 (to a similar effect). In doing so, the legislature attempted "to place the injured policyholder in the

---

[12] The wording that appears at ORS 742.504(1)(a) was first considered as part of a 1963 insurance bill, HB 1809 (1963), that was tabled by the Senate Judiciary Committee. That bill was substantially incorporated into HB 1041 (1965), that was under consideration in the next (1965) legislative session. The latter bill passed both houses of the legislature but ultimately was defeated by a governor's veto. The vetoed bill was, in turn, substantially incorporated into an insurance bill under consideration in the 1967 legislative session, HB 1506. The text of ORS 742.504(1)(a) finally became law when that bill was enacted by that legislature and signed by the governor in 1967.

same position he would have been in if the tortfeasor had had liability insurance." *Peterson*, 238 Or at 112; *see also North River*, 275 Or at 534.[13]

We think that defendant's reading of the provision at issue achieves those purposes. Under that reading, which makes the insurer's obligation to pay coextensive with the responsible party's liability, the UIM insured is placed in the same position—no better and no worse—than he or she would have occupied had the responsible party been insured. The insured is "legally entitled to recover," and the insurer is obligated to pay, only to the extent that an action against the tortfeasor would have been viable.[14]

Thus, we agree with defendant's construction of the phrase, "legally entitled to recover." In the context of ORS 742.504(1)(a) (and, consequently, in the context of the policy provision at issue), that phrase requires the UM/UIM claimant to demonstrate not merely fault and damages, but also that he or she had a *viable* tort claim against the responsible party and could have obtained a favorable judgment in that action.

---

[13] The only relevant reference by a legislator in the legislative history of ORS 742.504 confirms this general purpose: The sponsor of the original 1963 bill that eventually was enacted and codified as ORS 742.504 stated that the intent of his bill was to "put the person injured by an uninsured motorist in the same position he would be in had he been injured by an insured motorist." Minutes, Senate Judiciary Committee, May 16, 1963, at 1 (comments of Representative—as he then was— Robert E. Jones).

[14] States are divided over whether personal defenses that exist at the time of the accident can bar a plaintiff's UM/UIM recovery insofar as a plaintiff would not be legally entitled to recover in tort at that time. *Compare State Farm Auto. Ins. Co. v. Baldwin*, 470 So 2d 1230, (Ala 1985); *York v. State Farm Fire & Cas. Co.*, 64 Ohio St 2d 199, 414 NE2d 423 (1980); and *Sayan v. United Services Automobile Ass'n*, 43 Wash App 148, 716 P2d 895 (1986) (all holding that substantive litigation bars existing at the time of accident preclude insurance recovery); *with Watkins v. United States*, 462 F Supp 980 (SD Ga 1977), *aff'd* 587 F2d 279 (5th Cir 1979); *Sahloff v. Western Casualty & Surety Co.*, 45 Wis 2d 60, 171 NW2d 914 (1969); and *Booth v. Fireman's Fund Ins. Co.*, 253 La 521, 218 So 2d 580 (1968) (all holding that substantive litigation bars existing at the time of the accident do not preclude recovery). As a matter of policy, either approach is defensible. However, as we have construed the legislature's intent, Oregon's UM/UIM statutes were intended only to protect an insured to the same extent that he or she would have been protected had the negligent motorist been adequately insured. To allow an insured to recover UM/UIM benefits in instances when the insured could *not* have recovered even if the tortfeasor *had* been adequately insured, such as when the tortfeasor benefited from statutory or common-law immunity from suit, would go beyond that legislative intent.

One question remains, however: *When* must that viable action exist? Again, based on the above-stated legislative intent underlying the uninsured motorist coverage scheme, we think that the insurer's contractual obligation must be decided based on the state of facts that exists at the time of the accident. It is at the time of accident when the insured becomes in need of the UM/UIM protections that the statute was designed to effect, *viz.*, for damages caused by the negligence of an uninsured/underinsured driver.

Moreover, determining the legal viability of a claim at the time of the accident is consistent with the provisions in ORS 742.504(1)(a) that the legal entitlement issue may be decided by agreement of the parties or by arbitration. It is at the time of the accident that the facts necessary to decide that coverage issue become available.[15] Also, requiring that UM/UIM claimants demonstrate the continuing viability of an action against the tortfeasor *beyond* that point may provide an incentive to insurers to deny UIM claims.[16]

We conclude, then, that in requiring insurers to pay all sums that the insured "shall be legally entitled to recover" from the at-fault driver, ORS 742.504(1)(a), the legislature intended to require payment only to the extent that the insured is able to show that, at the time of the accident, he or she could obtain a favorable judgment against the responsible party. The policy provision at issue, which derives from that statutory provision, conveys that same meaning.

In the case before us, plaintiffs had a viable claim against Gallucci at the time of the accident. Plaintiffs could show fault and damages, and Gallucci did not have any immunity or other substantive protections from being sued.

---

[15] Defendant conceded as much when it asserted that the statute of limitations began to run at the time of the accident on the theory that it is at that date when the relevant coverages and liabilities became *fixed*. Defendant's argument failed in the context of the statute of limitations, because the contractual statute of limitations applied, and that statute begins to run when the contract is breached. However, the reasoning does apply to this question, which focuses not on the contract, but rather on the underlying tort liability.

[16] In particular, an insurer might be inclined to deny or delay a UM/UIM claim in the hope that insured would lose his or her action against the at-fault driver, either on procedural grounds (such as by operation of the statute of limitations) or through judgment on the merits.

Thus, plaintiffs were "legally entitled to recover" from Gallucci or his estate at the time of accident and, consequently, their claim for UIM coverage was not barred by the pertinent policy exclusion. The conclusions of the circuit court and the Court of Appeals to that effect were correct.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.