Argued and submitted November 2, 1998, decision of Court of Appeals reversed,
judgment of circuit court affirmed December 30, 1999, petition for reconsideration
filed February 15 dismissed, appeal dismissed and case dismissed with prejudice
by order May 25, 2000

KEN LEAHY CONSTRUCTION, INC.,
an Oregon corporation,
*Petitioner on Review,*

*v.*

CASCADE GENERAL, INC.,
an Oregon corporation,
*Respondent on Review.*

(CC 9307-04717; CA A85442; SC S44812)

994 P2d 112

Charles F. Adams, of Stoel Rives LLP, Portland, argued the cause for petitioner on review. With him on the briefs was Richard E. Alexander.

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause for respondent on review. With him on the brief was Peter A. Ozanne.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Riggs, Justices.**

RIGGS, J.

---

** Leeson, J., did not participate in the consideration or decision of this case.

**RIGGS, J.**

This is an appeal from a declaratory judgment that held that defendant Cascade General, Inc., is the owner of certain dry docks located on the property of plaintiff Ken Leahy Construction, Inc., and that required defendant to take possession of the dry docks. The Court of Appeals reversed that judgment. *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 149 Or App 480, 944 P2d 951 (1997). For the reasons that follow, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

We take the following facts from the Court of Appeals' opinion and also from the record:

> "Plaintiff is a construction and development company owned by Ken Leahy and his wife. Defendant is a ship-repair company based in Portland. Ken Leahy and two partners own a tract of land adjacent to the Columbia River known as the Bradwood property. The Bradwood property consists of 270 acres of forest land and 32 acres of marine industrial land.

> "In the summer of 1990, plaintiff and defendant began discussions about developing the Bradwood property as a ship-repair facility. As the discussions progressed, plaintiff contends that the parties reached an agreement under which plaintiff would develop and construct the facility for defendant at cost plus 10 percent. Plaintiff further claims that, during those discussions, defendant asked [plaintiff] to obtain a set of dry docks for the facility that were then being decommissioned by the Port of Portland."

*Id.* at 482.

There is evidence that plaintiff agreed to bid on the dry docks because defendant, as a tenant of the Port of Portland (Port), did not want the Port to know of defendant's interest in the purchase of the dry docks. Plaintiff contends that the parties agreed not to put their development agreement in writing to protect defendant's relationship with the Port. For its part, defendant claims that any discussion about the Bradwood project only was preliminary and that plaintiff purchased the dry docks on its own accord. In any case, on October 19, 1990, plaintiff submitted a bid to the Port to

remove the docks from the Port's property. The Port accepted that bid and paid plaintiff $190,000. Plaintiff moved the dry docks to the Bradwood property.

After plaintiff moved the dry docks, the parties continued their discussions about the development project. Plaintiff retained several consultants and an engineer to develop specifications for the construction and development of the Bradwood site as a dry dock facility. Defendant began negotiating with a potential tenant for the site. Defendant also supplied plaintiff's engineer with defendant's specifications. The engineer's plans, however, did not include plans or cost estimates for dry dock repair and restoration. Plaintiff explained that it never contemplated that it ultimately would be responsible for the dry docks themselves, because plaintiff understood that defendant was to have sole responsibility for them upon completion of the agreements between plaintiff and defendant.

As the discussions progressed, the parties reached sufficient agreement on the scope of the work and their respective responsibilities for the agreement to become an enforceable contract. As part of that contract, defendant agreed to purchase the dry docks from plaintiff for one dollar.

Ultimately, defendant's negotiations to secure a tenant for the site failed. Defendant, because of its erroneous belief that it had not formed an enforceable agreement with plaintiff, felt free to walk away from the discussions without penalty, and it did so.

Plaintiff sued defendant for breach of contract, unjust enrichment, and fraud. Additionally, plaintiff sought declaratory and injunctive relief. At trial, the court granted defendant's motion for a directed verdict against plaintiff's unjust enrichment claim. Plaintiff introduced evidence supporting its other claims, including evidence that the dry docks had no value to plaintiff, because it could not run a dry dock facility without defendant's participation. Plaintiff also introduced evidence that dismantling the dry docks and removing them from the Bradwood property would cost an estimated $548,000.

The contract and fraud claims were submitted to a jury. The jury found that the parties had an enforceable oral contract and that defendant had breached that contract. The jury also found that the contract included, as one of its terms, a promise by defendant to buy the dry docks from plaintiff for one dollar. The jury found, however, that plaintiff had sustained no damage from defendant's breach of the contract and that defendant had not committed fraud.

Following trial and the jury's verdict on the contract and fraud claims, the trial court then decided plaintiff's claim for declaratory and injunctive relief. Plaintiff had based that claim on the alleged breach of contract and further allegations that the dry docks constituted a nuisance, a trespass, and were a continuing financial liability. The court issued a declaration in the form that plaintiff had requested:

"Pursuant to the Fourth Claim for Relief, the Court declares that title to the dry docks * * * is vested in defendant and that defendant shall accept responsibility for and take possession of the dry docks immediately upon entry of this Judgment."

The trial court, however, did not make any findings of fact concerning its judgment.

Defendant appealed, assigning error to the trial court's declaration, but not to the jury's verdict on the breach-of-contract claim. The Court of Appeals first resolved a disputed fact by finding that the parties had an enforceable contract by which defendant was required to buy the docks for one dollar. The Court of Appeals' majority reversed and remanded to the trial court, because there was "no evidence that defendant fulfilled its contractual obligation to buy [the dry docks for one dollar], which is a factual predicate to a declaration that it owns them."[1] *Ken Leahy*, 149 Or App at 484. To the contrary, the court continued, plaintiff had proved that defendant had *not* fulfilled its contractual duty to purchase the docks. Under those circumstances, the Court of

---

[1] Judge Edmonds dissented from the three-judge panel's decision, opining that the trial court properly issued the declaratory judgment. *Ken Leahy*, 149 Or App at 488-89 (Edmonds, J., dissenting).

Appeals held, the trial court in effect had "granted specific performance of the contract through its declaration * * *." *Id.*

Granting specific performance was improper, the Court of Appeals reasoned, because plaintiff had not shown that it lacked an adequate remedy at law, which is a prerequisite to obtaining specific performance. The court noted that plaintiff would have been entitled to a declaration that defendant was obligated by contract to buy the dry docks and that plaintiff also could have obtained specific performance by proving the elements of that equitable remedy during the trial or in a later proceeding. The Court of Appeals concluded, however, that plaintiff is entitled to declaratory relief, resulting in specific performance, only on a showing that it lacks an adequate remedy at law and that plaintiff did not make that showing. *Id.* at 484-87.

■■■ We first address our standard of review. Declaratory judgment proceedings can be legal or equitable in nature, depending on the nature of the case and the relief sought.[2] *State Farm Fire v. Sevier*, 272 Or 278, 299, 375 P2d 88 (1975). The Court of Appeals correctly concluded that the claim in this case is an equitable claim and reviewed *de novo*, as ORS 19.415(3) requires. *See Winthers v. Bertrand*, 239 Or 97, 98-99, 396 P2d 570 (1964) (holding that suit for declaratory judgment of ownership of real property and for injunction requiring defendant to remove part of encroaching building was in equity). Under ORS 19.415(4), this court also may review *de novo* or it may limit its review to questions of law. Here, the facts either are undisputed or, where disputed, have been resolved by the Court of Appeals or the trial court. We thus limit our review to questions of law. *See Sleeper and Sleeper*, 328 Or 504, 506, 982 P2d 1126 (1999) (declining to review *de novo* when facts were not disputed).

■■■ Against the backdrop of the underlying reasons for the formation of the parties' agreement, our task on review is

---

[2] In his treatise, Professor Edwin Borchard explains that a declaratory judgment action is neither legal nor equitable, but has roots in equity. Edwin M. Borchard, *Declaratory Judgments*, 238-40 (2d ed 1941), *quoted in Consolidated Freightways, Inc. v. Flagg*, 180 Or 442, 453-54, 176 P2d 422 (1947). For the purposes of determining which standard of review to apply, however, it becomes necessary to classify a declaratory judgment proceeding as either legal or equitable.

to determine whether the trial court properly declared defendant to be the owner of the dry docks and whether the trial court properly ordered defendant to take possession of the docks. To answer those questions requires, among other things, a proper characterization of the parties' agreement and a proper characterization of the relief granted by the trial court. The jurisprudence of this court is well-settled that, under ORS 28.010, ORS 28.020, and ORS 28.030, set out below, a trial court can, on a proper showing, declare a party to be the owner of property. *See Wright v. Hazen Investments, Inc.*, 293 Or 259, 261, 648 P2d 360 (1982) (deciding procedural issue in suit for declaration of ownership of assigned leasehold interest); *Jackson and Jackson*, 281 Or 575, 577, 576 P2d 12 (1978) (affirming declaration of ownership of income tax refund); *Winthers*, 239 Or at 98-99 (affirming declaration of ownership of real property); *In re Estate of Ida Dahl*, 196 Or 249, 251, 248 P2d 700 (1952) (holding that declaration of ownership of partnership interest was *res judicata* for dispute in pending case).

■ In this case, the Court of Appeals' majority opinion appears to conflate the analysis necessary for granting a declaratory judgment with the separate analysis necessary for determining what, if any, coercive relief is appropriate to effectuate the declaration. That conflation stems from two analytical errors. First, the Court of Appeals erroneously characterized the trial court's declaration of ownership of the docks as a grant of specific performance. Because of that misunderstanding, the court proceeded to analyze whether plaintiff proved the necessary equitable elements that would have entitled it to a declaration of specific performance. In declaratory proceedings generally, however, specific performance is a form of coercive relief that is appropriately analyzed under ORS 28.080. *See* Edwin Borchard, *Declaratory Judgments*, 441, 441 n 71 (2d ed 1941) (defining coercive relief to include claims for injunctions, damages, specific performance, and other orders of execution). That is because the distinguishing characteristic of a declaratory judgment is the absence of coercive relief. *Id.* at 25-26. Thus, the Court of Appeals erred a second time when it concluded that a coercive declaratory judgment could be proper under ORS 28.010, ORS 28.020, or ORS 28.030.

ORS 28.010 governs the issuance of declaratory judgments and provides, in part:

> "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. * * *"

ORS 28.020 provides for declarations of rights under contracts and allows a party to a contract to "obtain a declaration of rights, status or other legal relations thereunder."[3] ORS 28.030 provides that "[a] contract may be construed either before or after there has been a breach thereof."

■　　Although often brought to determine whether a law is constitutional,[4] or to determine parties' rights under an insurance contract,[5] a declaratory judgment action also can be brought to declare a particular party to be the owner of certain property, even though the purchase contract has not been performed fully. In *Davis v. Wood*, 200 Or 602, 268 P2d 371 (1954), the plaintiff purchased restaurant equipment and fixtures under a conditional sales contract from the defendants. The purchase price under the written contract was $5,500, payable in a down payment and monthly installments. Plaintiff also agreed to purchase $2,500 worth of additional personal property to use in the restaurant. With $131.32 owing on the contract, plaintiff defaulted. Defendant argued that it then declared a forfeiture of all payments and took possession of *all* the personal property involved in the contract. This court remanded the case, ordering the trial court to determine whether, taking into consideration the

---

[3] ORS 28.020 provides, in part:

"Any person * * * whose rights, status or other legal relations are affected by a constitution, statutes, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

[4] *See, e.g., Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 555, 871 P2d 106 (1994) (statutes); *Savage v. Munn*, 317 Or 283, 287, 856 P2d 298 (1993) (constitutional amendment).

[5] *See, e.g., St. Paul Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 191, 923 P2d 1200 (1996) (declaration of obligations under insurance policy); *Vega v. Farmers Ins. Co.*, 323 Or 291, 293, 918 P2d 95 (1996) (same); *Windsor Ins. Co. v. Judd*, 321 Or 379, 381, 898 P2d 761 (1995) (same).

defendants' repossession of personal property that never was theirs, the plaintiff owed the defendant any money. This court held that, if the trial court found that the plaintiff did not owe the defendant money, then the "plaintiff shall be declared to be the owner of the personal property and entitled to its possession." *Id.* at 626.

■ Here, the trial court had the power to decide whether, as claimed by plaintiff, an oral contract between plaintiff and defendant existed. Upon finding that such a contract existed, the trial court had the power to construe the parties' rights with respect to that contract. ORS 28.010; ORS 28.020. The record is unclear with respect to the methodology that the trial court employed in reaching its decision. However, on this record, the trial court was entitled to conclude that the parties had agreed that defendant was to be the owner of the dry docks from the beginning. The record supports that construction, because an agreement that defendant was to own dry docks that were to be located on plaintiff's property makes sense only if ultimate ownership of the docks was part of a larger business transaction that included site development by plaintiff, repair of the docks by someone, and the conduct of an on-site dry dock business by defendant alone or in a joint venture with plaintiff and, perhaps, by others. In the context of such a larger agreement, the trial court could have viewed the payment of a dollar for the dry docks to be an inconsequential act. Or, the trial court might have viewed the dollar payment to be a sham component of a larger agreement under which plaintiff had claimed that defendant sought to preserve defendant's ability to deny involvement in the deal to the Port. *Davis* demonstrates that a contract that technically was not performed could be deemed or declared performed, thus prompting a transfer of title. *See Davis*, 200 Or at 626 (holding that amount due seller under conditional sales contract could be offset by seller's wrongful repossession). We therefore hold that the declaration that the trial court issued was proper under ORS 28.010, ORS 28.020, and ORS 28.030.

■ We turn to whether "further relief" was appropriate. Coercive, or "further," relief, based on a declaratory judgment, is available to parties under ORS 28.080. *See Lowe v. Harmon*, 167 Or 128, 136, 115 P2d 297 (1941) (holding that,

under statute renumbered as ORS 28.080, trial court may grant assessment of damages and other coercive relief). Under ORS 28.080, a court may, when "based on a declaratory judgment" and when "necessary or proper," grant other forms of coercive relief, including injunctive relief. ORS 28.080 provides:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application thereof shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

Here, the relief that plaintiff sought embodied both a declaration of contractual rights under ORS 28.020 and a request for "further relief" under ORS 28.080. The "further relief" that the trial court selected took the form of an injunction requiring that defendant take possession of and remove the docks that the trial court found belonged to defendant, but which were on plaintiff's property. Defendant argues that the trial court erred in granting injunctive relief because plaintiff failed to prove a lack of an adequate remedy at law, which is a necessary element for injunctive relief.

We need not decide whether proof of all the equitable elements of an injunction is a prerequisite in every case seeking injunctive relief under ORS 28.080,[6] because the record *in this case* supports the trial judge's conclusion that an injunction was appropriate to give effect to the declaration of ownership. We thus find no error in the trial court's grant of injunctive relief, in light of the facts that: (1) the court declared that defendant owned the dry docks; (2) those docks were located on property owned by plaintiff and two others; (3) the docks were costly to remove; and (4) the docks had no value to plaintiff outside the context of an agreement for participation by defendant in operating them in some fashion. The supplemental relief here was designed to provide the

---

[6] *See Amer. F. of L. v. Bain*, 165 Or 183, 216, 106 P2d 544 (1940) (refusing to issue injunction restraining officials from enforcing statutes declared to be unconstitutional because plaintiffs failed to prove irreparable harm).

kind of complete relief to plaintiff in the manner contemplated by ORS 28.080, that was not available to plaintiff in an action at law.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.