Argued and submitted February 12, reversed and remanded April 30, 1997

Robert WORKMAN,
*Appellant,*

*v.*

VALLEY INSURANCE COMPANY,
*Respondent.*

(95-L-2554-L-2(3); CA A93234)

938 P2d 219

Michael Brian argued the cause and filed the briefs for appellant.

Joel S. DeVore argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

Deits, P. J., dissenting.

**HASELTON, J.**

Plaintiff appeals from the entry of summary judgment in favor of defendant automobile insurer in this breach of contract action for nonpayment of underinsured motorist (UIM) benefits. The trial court determined that plaintiff's alleged noncompliance with the insurance policy's "consent-to-settle" condition precluded UIM coverage and, particularly, that there were no issues of material fact pertaining to the inquiry prescribed in *Federated Service Ins. Co. v. Granados*, 133 Or App 5, 889 P2d 1312, *rev den* 321 Or 512 (1995). We reverse.

On August 20, 1992, plaintiff was injured when the car he was driving, which was owned by his employer, was rear-ended by a car driven by Susan Trythall. Trythall was insured under an auto liability policy, issued by Allstate Insurance Co., with bodily injury limits at $50,000 per person. The company car that plaintiff was driving was insured under an auto policy issued by defendant Valley Insurance Co. (Valley), which, *inter alia*, provided UIM coverage with limits of $300,000. Plaintiff was an "insured" for purposes of that UIM coverage. The UIM policy included the following "exhaustion" and "consent-to-settle" provisions:

"**A. COVERAGE**

"\* \* \* \* \*

"2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered 'auto' is principally garaged, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.[1]

"\* \* \* \* \*

"**C. EXCLUSIONS**

"This insurance does not apply to any of the following:

"1. Any claim settled without our consent."

---

[1] After the events material to this case, we and the Supreme Court held that such an "exhaustion" clause is unenforceable. *Vega v. Farmers Ins. Co.*, 134 Or App 372, 378-79, 895 P2d 337 (1995), *aff'd* 323 Or 291, 297-307, 918 P2d 95 (1996). However, as described below, *see, e.g.*, 147 Or App at 672 n 2, the contemporaneous existence of that clause, and the parties' belief that it was enforceable, contributed to a course of conduct that will rarely be repeated after *Vega*.

In March 1994, plaintiff, without notice to Valley, filed a personal injury action against Trythall. Settlement discussions ensued without Valley's participation. On October 31, 1994, plaintiff and Trythall tentatively agreed to a settlement by which Trythall would pay $45,000—*i.e.*, $5,000 less than the $50,000 policy limits under her Allstate liability coverage—in exchange for a stipulated judgment of dismissal and a full release.

There is some dispute as to whether plaintiff was aware of the Valley policy at the time he sued Trythall or when he became aware of that coverage. However, viewing the record most favorably to plaintiff, some time between October 31 and November 7, 1994, plaintiff's counsel learned of the existence of the Valley policy and its UIM coverage. Consequently, on November 7, plaintiff's counsel sent defendant a letter, which stated, in part:

> "This office represents Robert Workman who was driving your insured's Ford Festiva on August 20, 1992, in an accident in Grants Pass, Oregon. I think your file will reflect the other particulars of the accident.

> "The adverse driver was Sue Ellen Cruz, nka Sue Ellen Trythall. We filed the lawsuit in Josephine County and the matter is set for trial on January 18, 1995. We had a settlement conference with the Judge and Allstate on October 31, 1994, and reached a settlement figure of $45,000. However, Allstate wants a full release of their insured, Sue Ellen (Cruz) Trythall.

> "What I need from Valley, who has uninsured motorist limits of $300,000.00 is permission to settle with Allstate (their limits are $50,000.00) and to give a full release to their insured, without any prejudice to Mr. Workman's uninsured motorist claim against Valley Insurance."

The following day, plaintiff's counsel telephoned a Valley adjuster, Weahunt, to discuss the proposed settlement. Plaintiff's counsel described that conversation as follows:

> "I asked Weahunt how Valley handled underinsured motorist claims (UIM). Weahunt told me Valley's practice. I told Weahunt that Workman was going to give Allstate/Trythall

a full release in exchange for payment of $45,000 of a $50,000 Allstate policy limit available to Workman's claim. Workman had not yet signed the release. Weahunt consented to Workman giving a full release to Trythall/Allstate and settling Workman's claim with Trythall/Allstate. Weahunt stated that if Workman did not receive the policy limits from the Allstate policy, i.e. $50,000, Valley would not entertain an UIM claim by Workman. I told Weahunt that if I could get Allstate to increase the settlement to $50,000, I would get back in touch with him."

Weahunt described the conversation as follows:

"I spoke with [plaintiff's attorney] by telephone. He asked if I would waive the unrecovered balance of Allstate's limits, that is $5,000, and allow an underinsured motorist claim. I responded that Valley could not agree to such an arrangement. I indicated that Valley would not consent to settlement and entertain an underinsured motorist claim unless Allstate's per person liability limit were fully paid. The conversation ended with the attorney's promise that he would advise Valley of the outcome of his negotiation. Valley heard nothing more from [plaintiff's attorney]."

Weahunt's contemporaneous notes of the conversation stated:

"Received Fax from [plaintiff's attorney.] Discussed with Art. He doesn't have a UIM claim unless he gets the entire limit or if someone else gets a portion of the limit and his client gets the remainder[.] The attorney asked if I would waive the differences of $5,000 and allow the UIM claim[.] I said no[.]

"* * * He asked if he would consent to a full release of Allstate's client if they obtained their policy limit and agreed to that[.] * * * The attorney will advise the outcome of his negotiation[.]"

Thereafter, without any further communication with Valley, plaintiff settled his claim against Trythall for $45,000 in exchange for a stipulated dismissal and a full release.

In June 1995, plaintiff brought this action, alleging, *inter alia*, that Valley had breached the terms of its policy by

failing to pay plaintiff UIM benefits in the amount of $255,000.[2] Valley answered and moved for summary judgment asserting, in part, that either plaintiff's failure to exhaust the limits of Trythall's liability coverage or his failure to obtain Valley's consent to the Trythall/Farmers settlement barred his action. With respect to the consent-to-settle issue, plaintiff responded that there were genuine issues of material fact as to any or all of three essential questions: First, had Valley consented to the settlement? Second, even if Valley had not consented, had Valley been prejudiced by plaintiff's noncompliance with the consent-to-settle provision? Third, even if Valley had not consented and had been prejudiced by plaintiff's conduct, had plaintiff "nevertheless acted reasonably in breaching the consent-to-settle provision"? *Granados*, 133 Or App at 9. The trial court concluded that there were no disputed issues of material fact because, even viewing the record most favorably to plaintiff, Valley was entitled to summary judgment; that is, plaintiff had not complied with the consent-to-settle condition[3] and that noncompliance was so prejudicial and unreasonable as to preclude UIM coverage.

■■   On appeal, plaintiff reiterates that genuine issues of material fact precluded summary judgment. Our analysis is framed by the three-part inquiry prescribed in *Granados*. To prevail on a defense of an insured's noncompliance with a consent-to-settle condition, a UIM insurer must prove that: (1) the insured failed to comply with that condition *and* (2) the insurer was "prejudiced by the claimant's conduct." *Granados*, 133 Or App at 9. Even if the insurer proves both of those elements, the insured may nevertheless prevail if he or

---

[2] As suggested earlier, 147 Or App at 669 n 1, with the demise of "exhaustion" clauses because of *Vega*, this sequence of events—*i.e.*, the insured first prosecuting the "third-party" liability action and then seeking to recover under his or her own UIM coverage—will rarely occur after *Vega*. That is, there is generally little incentive, much less any requirement, for UIM insureds to pursue third-party action. In most cases, the cleaner and more direct approach is for UIM insureds simply to make a claim under their own coverage and leave any prosecution of third-party actions to the UIM insurer by way of subrogation.

[3] In *Federated Service Ins. Co. v. Granados*, 133 Or App 5, 8, 889 P2d 1312, *rev den* 321 Or 512 (1995), we observed that, although the consent-to-settle provision was styled as an exclusion of coverage, it was, in fact, a condition of forfeiture.

she "acted reasonably in breaching the consent-to-settle provision." *Id.*[4] A genuine issue of material fact as to any one of those three cumulative elements renders summary judgment erroneous and compels reversal. *See, e.g., Armintrout v. Transportation Ins. Co.*, 137 Or App 86, 903 P2d 407, *rev den* 322 Or 361 (1995); *Granados.*

■ We conclude, as amplified below, that there was a genuine issue of material fact as to whether Valley, through Weahunt, consented to the Trythall settlement. Consequently, the trial court erred in allowing summary judgment. *See generally Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996). Because of that disposition, we do not reach, or resolve, plaintiff's alternative contention pertaining to *Granados'* second and third cumulative inquiries.

The parties agree that, from plaintiff's perspective, the most favorable evidence of consent is set out in his attorney's affidavit:

> "I asked Weahunt how Valley handled underinsured motorist claims (UIM). Weahunt told me Valley's practice. I told Weahunt that Workman was going to give Allstate/Trythall a full release in exchange for payment of $45,000 of a $50,000 Allstate policy limit available to Workman's claim. Workman had not yet signed the release. *Weahunt consented to Workman giving a full release to Trythall/Allstate and settling Workman's claim with Trythall/Allstate. Weahunt stated that if Workman did not receive the policy limits from the Allstate policy, i.e. $50,000, Valley would not entertain an UIM claim by Workman.* I told Weahunt that if I could get Allstate to increase the settlement to $50,000, I would get back in touch with him." (Emphasis supplied.)

Valley acknowledges that, if the attorney's "recollection stopped [with the emphasized language], the court would

---

[4] In *Armintrout v. Transportation Ins. Co.*, 137 Or App 86, 90, 903 P2d 407, *rev den* 322 Or 361 (1995), we noted, but did not resolve, the question of which party bears the ultimate burden of proof on *Granados'* final element—*i.e.*, must the insurer prove that the insured's conduct was unreasonable or must the insured prove that his or her noncompliance was reasonable? *See also Herman v. Valley Ins. Co.*, 145 Or App 124, 131, 928 P2d 985 (1996) (same). Because our disposition does not turn on the "reasonableness" element, we also do not reach that question.

face a factual dispute" as to consent. Valley continues, however:

> "However, both men agree that Valley's representative communicated its position on the effect of the proposed settlement. [Plaintiff's attorney] remembered that Valley's representative said that, if Mr. Workman settled for $45,000, then Valley 'would not entertain a UIM claim by Workman.' The claims rep wrote in his contemporaneous notes, 'The attorney asked if I would waive the difference of $5,000 and allow the UIM claim. I said no.' This undisputed response made clear the answer to the attorney's letter. Mr. Workman could *not* settle as proposed—'without any prejudice to Mr. Workman's uninsured motorist claim against Valley Insurance.'
>
> "The import of the conversation was confirmed in [plaintiff's attorney's] concluding comment, 'I told Weahunt that *if* I could get Allstate to increase the settlement to $50,000, I would get back in touch with him.' It was only *if* Mr. Workman received $50,000, that he would have any reason to 'get back in touch' with Valley to pursue a UIM claim. The attorney recognized that Valley had communicated its refusal to consent to entertain a UIM claim based on the proposed settlement." (Emphasis in original; citation omitted.)

Valley's characterization of plaintiff's attorney's account, while certainly plausible, ignores the existence of the exhaustion provision. That is, at the time plaintiff's attorney and the adjuster, Weahunt, spoke in early November 1994, we had not yet decided *Vega v. Farmers Ins. Co.*, 134 Or App 372, 895 P2d 337 (1995), *aff'd* 323 Or 291, 918 P2d 95 (1996), which held that exhaustion provisions in UIM policies were unenforceable. Thus, it may be reasonably inferred that, at that time, both parties assumed that *both* the exhaustion provision and the consent provision were enforceable and that plaintiff's failure to comply with either would preclude recovery under the UIM policy.

Viewed in that context, and consistent with the parties' reasonable contemporaneous assumptions, plaintiff's attorney's account is quite plausibly susceptible to a materially different "spin" than that which Valley urges. In particular, a finder of fact could reasonably find from plaintiff's

attorney's account that Weahunt (1) consented to the Trythall settlement, thereby satisfying the consent-to-settle condition,[5] but (2) simultaneously stated, consistently with the exhaustion provision, that, unless that settlement exhausted the limits of Trythall's liability coverage with Farmers, plaintiff could not recover UIM benefits from Valley. That is, Weahunt's representation that "if Workman did not receive the policy limits from the Allstate policy, * * * Valley would not entertain an UIM claim by Workman" pertained not to any withholding of consent—which was actually given[6]—but to Valley's refusal to waive the exhaustion provision, which *Vega* subsequently rendered unenforceable. Thus, viewed most favorably to plaintiff, the record discloses a genuine issue of material fact on the threshold consideration of whether plaintiff failed to obtain Valley's consent to the Trythall settlement.

The trial court erred in granting defendant's summary judgment motion.

Reversed and remanded.

**DEITS, P. J.,** dissenting.

I do not agree with the majority that plaintiff adduced satisfactory evidence to rebut Valley's showing that it did not consent to the settlement of plaintiff's underlying action against Trythall and Allstate. Accordingly, I would affirm the summary judgment.

The majority correctly notes that "the most favorable evidence of consent" is contained in plaintiff's attorney's affidavit pertaining to his conversation with Valley's adjuster, Weahunt. The affidavit relates that Weahunt agreed to a settlement between plaintiff and Allstate, but instead of the

---

[5] And, concurrently, avoiding a potential breach of contract claim for unreasonably withholding consent to settlement.

[6] As noted, plaintiff's counsel's affidavit explicitly stated, "Weahunt consented to Workman giving a full release to Trythall/Allstate and settling Workman's claim with Trythall/Allstate." The dissent does not address that statement. Nor does the dissent explain why, given the parties' contemporaneous pre-*Vega* belief that the exhaustion provision was enforceable, the jury could not reasonably conclude that Weahunt consented to the settlement so as to avoid a claim for unreasonably withholding consent, but, at the same time, expressed Valley's determination to enforce the exhaustion requirement.

$45,000 that plaintiff informed Weahunt he was prepared to accept from Allstate:

> "Weahunt stated that if [plaintiff] did not receive the policy limits from the Allstate policy, i.e. $50,000, Valley would not entertain an UIM claim by [plaintiff]. I told Weahunt that if I could get Allstate to increase the settlement to $50,000, I would get back in touch with him."

*See* 147 Or App at 673. There is no evidence that plaintiff either got Allstate to increase its settlement offer or got back to Weahunt, and it is undisputed that plaintiff settled the underlying action for $45,000.

The attorney's affidavit, which is consistent with the other evidence in material respects, could not be plainer: Weahunt did not consent to a settlement of $45,000, but indicated that Valley would consent if plaintiff were able to settle with Allstate for $5,000 more.

The majority nevertheless finds a disputed question of material fact as to whether Valley consented to the $45,000 settlement. It reasons that the attorney and Weahunt were actually concerned with the policy's exhaustion provision rather than or as much as with the consent-to-settlement provision that they appeared to be discussing. Piecing the two provisions together, the majority concludes that it was inferable:

> "Weahunt's representation that 'if [plaintiff] did not receive the policy limits from the Allstate policy, * * * Valley would not entertain an UIM claim by [plaintiff]' pertained not to any withholding of consent—which was actually given—but to Valley's refusal to waive the exhaustion provision[.]" 147 Or App at 673.

Thus, the majority concludes that a trier of fact could find that Weahunt actually consented to the $45,000 settlement, and that his statement that Valley would not entertain plaintiff's claim if he settled for less than $50,000 did not indicate a withholding of *consent* to the lower settlement amount, but pertained instead to a different policy requirement that neither party said a word about in the course of a conversation that, from beginning to end, related to a proposed settlement for which plaintiff sought Valley's consent.

Juries are not as imaginative as the majority is, and one of the reasons for the summary judgment procedure is to prevent them from being that imaginative.[1] For the above reasons, I respectfully dissent.

---

[1] In its response to this dissenting opinion, the majority states that I have failed to address the sentence in the attorney's affidavit that "Weahunt consented to [plaintiff] giving a full release to Trythall/Allstate and settling [plaintiff's] claim with Trythall/Allstate." 147 Or App at 675 n 6. However, the reason I have not singled that sentence out for isolated attention is that, unlike the majority, I think that that sentence must be read together with the two that follow it, which reflect the attorney's and Weahunt's mutual understanding that no settlement of less than $50,000 would be acceptable. Stated differently, neither I nor, in my view, a reasonable factfinder could conclude from the affidavit as a whole that consent to any settlement short of $50,000 was given. Perhaps the reason why I think that a rational factfinder could not view the evidence in the way that the majority does is that the factfinder could not reasonably base a finding on a single sentence, taken out of context, as the majority does.