Argued and submitted September 12, 1997, affirmed January 7, 1998

Robert Gary WRIGHT,
Shari Lea Wright, and James R. Strickland,
Personal Representative of the Estate of
Geoffery Eric Wright, Deceased,
*Appellants,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
and State Farm Fire and Casualty Company,
*Respondents.*

(16-96-05691; CA A95110)

952 P2d 73

J. Michael Starr argued the cause for appellants. With him on the briefs was Starr & Vinson, P.C.

William G. Wheatley argued the cause for respondents. With him on the brief were Kathryn S. Chase, Karl B. Matthews and Jaqua & Wheatley, P.C.

Before De Muniz, Presiding Judge, Deits, Chief Judge,* and Haselton, Judge.

HASELTON, J.

---

* Deits, C. J., *vice* Richardson, S. J.

**HASELTON, J.**

Plaintiffs appeal from the trial court's judgment entered pursuant to ORCP 66 in which the trial court resolved questions of insurance coverage in defendants' favor. We affirm.

Plaintiffs are Robert and Shari Wright (the Wrights), two individuals, and James Strickland, the personal representative of the estate of the Wrights' son, Geoffery. The Wrights are the named insureds on two insurance policies that are the subject of this litigation: an automobile insurance policy issued by defendant State Farm Mutual Automobile Insurance Company (the "auto policy") and an umbrella personal liability policy issued by defendant State Farm Fire and Casualty Company (the "umbrella policy"). The auto policy had liability limits of $100,000 per person and $300,000 per accident, and the umbrella policy provided personal liability coverage with a $1,000,000 limit. The parties dispute the coverage available under both policies.

This is a submitted controversy pursuant to ORCP 66,[1] and the parties agreed to the following material facts:

On March 19, 1995, Geoffery was fatally injured in an automobile collision while riding in a 1993 Honda owned by his parents. The Honda was being driven by Ka Man Wong, whose negligence contributed to the accident. Although another vehicle was involved in the accident, the

---

[1] ORCP 66 provides, in part:

"**A Submission Without Action.** Parties to a question in controversy, which might have been the subject of an action with such parties plaintiff and defendant, may submit the question to the determination of a court having subject matter jurisdiction.

"A(1) **Contents of Submission.** The written submission shall consist of an agreed statement of facts upon which the controversy depends, a certificate that the controversy is real and that the submission is made in good faith for the purpose of determining the rights of the parties, and a request for relief.

"\* \* \* \* \*

"A(3) **Effect of the Submission.** From the moment the submission is filed, the court shall treat the controversy as if it is an action pending after a special verdict found. The controversy shall be determined on the agreed case alone, but the court may find facts by inference from the agreed facts."

driver of that vehicle was not negligent. Wong was a permissive user of the Honda and, consequently, was an additional insured under both the auto policy and the umbrella policy. Damages exceeded $100,000.

Plaintiff Strickland, as personal representative, submitted claims under both policies, which, for reasons explained below, defendants denied, except to the extent that defendant State Farm Auto offered to pay $25,000 under the liability coverage of the auto policy. The parties submitted the controversy pursuant to ORCP 66.

The trial court generally determined: (1) The "family-household" exclusion of the auto policy applied to plaintiffs, including particularly the personal representative and, thus, precluded recovery under the liability coverage of that policy, except to the extent required under Oregon's Financial Responsibility Law—$25,000. (2) Plaintiffs were not entitled to recover under the underinsured motorist coverage of the auto policy and, particularly, were not entitled to underinsured motorist coverage of $75,000, representing the difference between the $25,000 liability coverage mandated by the Financial Responsibility Law, and the auto policy's $100,000 per person liability limit. (3) For similar reasons, plaintiffs could not recover under either the liability or underinsured motorist coverage of the umbrella policy.

Plaintiffs appeal, raising three assignments of error. First, plaintiffs contend that the trial court erred in concluding that the "family member" exclusion in the auto policy and the "household" exclusion in the umbrella policy preclude liability coverage. Second, plaintiffs contend that the trial court erred in concluding that no underinsurance coverage was available under the auto policy. Third, plaintiffs contend that the trial court erred in concluding that no underinsurance coverage was available under the umbrella policy. We review determinations of submitted controversies under ORCP 66 for errors of law. *California Casualty Indemnity Exchange v. Maritzen,* 123 Or App 166, 168, 860 P2d 259, *rev den* 318 Or 97 (1993).

The first assignment of error involves the construction and application of the liability provisions of the auto policy and the umbrella policy. The auto policy includes liability coverage with limits of $100,000 per person and $300,000 per

occurrence. Under the auto policy, State Farm Auto agrees to pay:

"damages which an **insured** becomes legally liable to pay because of:

"a. **bodily injury** to others, * * *

"* * * * *

"caused by accident resulting from the ownership, maintenance or use of **your car**[.]" (Emphasis in original.)

Plaintiffs contend that because Wong, a permissive user, was "an insured," and because Geoffery suffered "bodily injury * * * caused by accident resulting from [Wong's] use of" the Wrights' vehicle, the policy provides liability coverage up to $100,000.

Defendants, however, invoke the auto policy's "family member" exclusion, which states:

"THERE IS NO COVERAGE:

"* * * * *

"2.   FOR ANY **BODILY INJURY** TO:

"* * * * *

"c.   (1)   **YOU**, OR

"(2)   ANY OTHER **INSURED** OR MEMBER OF AN **INSURED'S** FAMILY RESIDING IN THE **INSURED'S** HOUSEHOLD.

"TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EXCEED THE LIMITS OF LIABILITY REQUIRED BY LAW." (Emphasis in original.)

Defendants reason that, because Geoffery was a "member of [the Wrights'] family residing in [the Wrights'] household," the liability coverage for any claim based on bodily injury to Geoffery cannot exceed the $25,000 limit required by the Financial Responsibility Law. *See* ORS 742.450(4); ORS 806.080(1); ORS 806.070(2);[2] *cf. Collins v. Farmers Ins. Co.,*

---

[2] ORS 742.450 provides, in part:

"(4) Every motor vehicle liability insurance policy issued for delivery in this state shall provide liability coverage to at least the limits specified in ORS 806.070."

312 Or 337, 347, 822 P2d 1146 (1991) ("family member" exclusion can exclude liability coverage only in excess of statutorily prescribed minimum).

Plaintiffs counter that the "family member" exclusion is inapposite because Strickland, the personal representative and the only person who has made a claim against the auto policy, is not a family member.

■ Plaintiff's reliance on the personal representative's non-"family member" status misses the mark. The "family member" exclusion does not refer to the status of the person bringing the claim (here, the personal representative). Rather, it explicitly pertains to the status of the person whose injury is the basis of the claim against the policy (here, Geoffery). That is, the exclusion does not limit who may bring a claim; instead, it unambiguously describes persons whose injuries are not covered: "there is no coverage * * * for any bodily injury to * * * any * * * member of an insured's family residing in the insured's household to the extent the limits of liability of this policy exceed the limits of liability required by law."[3] Because Geoffery was a member of the insureds' family living in their household, there is no coverage for his death.[4]

---

ORS 806.080 provides, in part:

"(1) A motor vehicle liability insurance policy * * * must meet all of the following requirements:

"* * * * *

"(c) It must provide the minimum limits of coverage required under ORS 806.070."

ORS 806.070 provides, in part:

"(2) The schedule of payments is as follows:

"(a) $25,000 because of bodily injury to or death of one person in any one accident[.]"

[3] Because the exclusion is unambiguous, we have no occasion to resort to the principle, which plaintiffs urge, that ambiguities in exclusionary language are to be resolved against the insurer. *Compare Totten v. New York Life Ins. Co.*, 298 Or 765, 770-72, 696 P2d 1082 (1985) (declining to apply principle that exclusionary clauses are to be construed in favor of the insured where clause was unambiguous); *with Warren v. Farmers Ins. Co. of Oregon*, 313 Or 158, 163, 830 P2d 203 (1992); *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 319, 273 P2d 212, 275 P2d 226 (1954) (both applying principle after determining that language was susceptible to more than one reasonable reading).

[4] At oral argument, plaintiffs suggested that the family member exclusion might effect an improper "end run" around the abolition of spousal immunity and

Thus, the trial court correctly concluded that $25,000, *see* ORS 806.070(2), was available under the liability coverage of the auto policy.

■ Plaintiffs make a similar argument with respect to the umbrella policy, which provides personal liability coverage with a limit of $1,000,000. Under that coverage, the insurer agrees to pay "[i]f you are legally obligated to pay damages for a **loss**[.]" (Emphasis in original.) The policy defines "loss" to include "an accident that results in **personal injury**," which includes "death resulting" from "bodily harm." (Emphasis in original.) Plaintiffs contend that that language entitles them to the full $1,000,000 under the personal liability coverage of the umbrella policy.

Defendants again disagree, relying on exclusionary language, which states that State Farm Fire and Casualty

"will not provide insurance:

"* * * * *

"10. for **personal injury** to the **named insured**, spouse, or anyone within the meaning of part a. or b. of the definition of **insured**." (Emphasis in original.)

The definition of "insured" includes

"b. the following residents of the **named insured's** household:

"(1) the **named insured's relatives**[.]" (Emphasis in original.)

The policy defines "relative" to include "any person related by blood * * * to the **named insured**" and "bodily injury" to include "physical injury * * * and death resulting therefrom."

---

parental immunity. *See Heino v. Harper*, 306 Or 347, 759 P2d 253 (1988) (common-law rule of spousal immunity no longer available to bar negligence action between spouses); *Winn v. Gilroy*, 296 Or 718, 681 P2d 776 (1984) (doctrine of general parental immunity for negligent injury to minor children abrogated). That argument was not raised in the trial court and was not briefed on appeal. Even if the argument is properly before us, we note that, on at least two occasions since the abolition of intra-family immunity, the Supreme Court has considered cases in which the family-household exclusion limited liability coverage and in neither instance did the court suggest that application of the exclusion was at all improper. *See, e.g., Collins v. Farmers Ins. Co.*, 312 Or 337, 822 P2d 1146 (1991); *State Farm Fire and Casualty Co. v. Jones*, 306 Or 415, 759 P2d 271 (1988).

(Emphasis in original.) Defendants contend that because of this provision, plaintiffs are not entitled to any personal liability coverage under the umbrella policy.

As with the "family member" exclusion of the auto policy, defendants contend that the exclusionary language of the umbrella policy precludes personal liability coverage. Plaintiffs again contend that the exclusion does not apply because the personal representative is not a "resident of [the Wrights'] household" who was "[the Wrights'] relative."

Again, plaintiffs' focus on the personal representative's relationship—or lack of relationship—to the Wrights is inapposite. The exclusionary language of the umbrella policy, like that of the auto policy, pertains to who was injured, not who is asserting the claim. Because Geoffrey was "related by blood" to the named insureds, and resided in their household, a claim based on his death was excluded from the umbrella policy's personal liability coverage.[5]

■ We proceed to the second assignment of error, which challenges the trial court's determination that plaintiffs were not entitled to recover against the auto policy's underinsured motorist ("UIM") coverage. That dispute arises primarily because the allegedly underinsured vehicle (the 1993 Honda) was insured by the same policy (the auto policy) under which plaintiffs claim UIM benefits.

Plaintiffs' argument, as we understand it, is generally as follows: (1) the auto policy provided liability limits of $100,000; (2) consequently, and concurrently, under ORS 742.502(2)(a),[6] the policy provided both uninsured motorist

---

[5] Plaintiffs also argue that the auto and umbrella policies violate ORS 742.450 because they do not expressly state that, for claims subject to the family-household exclusion, the limits of liability are $25,000 and zero, respectively. We have considered that argument and reject it without further discussion.

[6] ORS 742.502(2)(a) provides:

"A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be

("UM") and underinsured motorist ("UIM") coverage with the same $100,000 limit for all insureds, including Geoffrey; (3) by virtue of the application of the "family member" exclusion, the 1993 Honda's actual liability coverage in this case was $25,000; (4) consequently, the Honda was underinsured to the extent of the $75,000 difference between the $25,000 liability coverage and the policy's $100,000 UIM coverage, and plaintiffs are entitled to recover to that extent. Thus, plaintiffs attempt to bypass the $25,000 limitation on recovery under the liability coverage by seeking recovery for the same injuries under the UIM coverage—indeed, the "family member" exclusion, by limiting liability coverage to $25,000, is the predicate for plaintiffs' argument that the Honda was "underinsured."

Defendant State Farm Auto responds that plaintiffs' reasoning rests on a false premise as to the policy's UIM coverage and cannot be reconciled with the policy or underlying statutes. The auto policy provides, in part:

> "We will pay compensatory damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle**.
>
> "**Uninsured Motor Vehicle**—means:
>
> "1. a land motor vehicle, the ownership, maintenance or use of which is:
>
> "* * * * *
>
> "c. insured or bonded for bodily injury liability at the time of the accident and whose limit of liability for bodily injury liability:
>
> "(1) is less than the limit of liability for uninsured motor vehicle coverage under this policy[.]"

The policy expressly excludes from its definition of

> "uninsured motor vehicle: * * * a land motor vehicle * * * insured under the liability coverage of this policy[.]"

---

equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

That exclusion is derived from ORS 742.504(2)(e)(A) (" 'Uninsured vehicle' does not include * * * [a]n insured vehicle[.]"). The 1993 Honda involved in the accident is listed on the declarations page of the auto policy; hence, that vehicle was "insured under the liability coverage of this policy." Thus, under the auto policy, the 1993 Honda was not an "uninsured vehicle," and there was no UM coverage for bodily injuries, including Geoffery's death, arising out of the operation of that vehicle. *State Farm Mut. Ins. v. Whitlock*, 59 Or App 303, 650 P2d 1042 (1982), *rev den* 294 Or 460 (1983) (where decedent passenger was subject to "family member" exclusion, policy's provision "insured vehicle" exclusion tracking ORS 743.792(2)(e) precluded UM coverage).[7]

The auto policy and, particularly, the "insured vehicle exclusion," consistently uses the term "*un*insured" and never uses the term "underinsured." Nevertheless, the policy's definition of "uninsured vehicle" by its terms includes "*under*insured vehicle." That is, that definition encompasses not only conventionally "uninsured" vehicles—*i.e.*, vehicles whose liability coverage is less than that required under Oregon's Financial Responsibility Law, *see* ORS 806.070; ORS 742.504(2)(d)(A)—but also vehicles with liability limits that equal or exceed the statutorily required minimum but are less than the limits of the "uninsured motor vehicle" coverage under the auto policy. For example, a vehicle having liability limits of $40,000 (which exceed the $25,000 minimum under the Financial Responsibility Law) would be deemed an "uninsured vehicle" for purposes of the auto policy, and that policy would afford "UM" coverage of $60,000, representing the difference between the vehicle's liability coverage limits and the auto policy's $100,000 limits. That coverage, however denominated, is, in fact, quintessential UIM coverage. *See generally Vega v. Farmers Ins. Co.*, 323 Or 291, 918 P2d 95 (1996);

---

[7] In *State Farm Mut. Ins. v. Whitlock*, 59 Or App 303, 307-08, 650 P2d 1042 (1982), *rev den* 294 Or 460 (1983), we held that the legislature, by enacting ORS 743.792(2)(e), had "legislatively overruled" *Bowsher v. State Farm Fire Co.*, 244 Or 549, 419 P2d 606 (1966), which, as we summarized the holding, concluded that "the uninsured motorist provision of an insurance policy must be construed to cover the injuries received by the insured when no liability insurance coverage was available to him, because the only applicable insurance (insured's own) specifically excluded his claim." 59 Or App at 306.

*Pitchford v. State Farm Mutual Auto. Ins. Co.*, 147 Or App 9, 934 P2d 616, *rev den* 325 Or 621 (1997).

By the same token, the policy's exclusion of the "insured vehicle" from its broad definition of "uninsured motor vehicle" means that injuries or death resulting from the operation of the 1993 Honda cannot be the subject of either UM or UIM coverage under the policy. Thus, the policy, by its terms, precludes UIM coverage in these circumstances.

■ Plaintiffs argue, however, that the policy impermissibly deviates from controlling provisions of the Insurance Code. *See* ORS 742.038(2).[8] Plaintiffs assert particularly that preclusion of UIM coverage under the auto policy, because of the 1993 Honda's status as a vehicle insured under that policy, does not comport with ORS 742.502 and ORS 742.504. ORS 742.502(2)(a) provides, in part:

> "Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

ORS 742.502(4) further provides that "[u]nderinsurance coverage *shall be subject to* ORS 742.504." (Emphasis supplied.) Finally, ORS 742.504 provides, in part:

> "Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. * * *
>
> "* * * * *

---

[8] ORS 742.038(2) provides:

"Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with the Insurance Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."

"(2) As used in this policy:

"* * * * *

"(b) 'Insured vehicle' * * * means:

"(A) The vehicle described in the policy[.]

"* * * * *

"(d) 'Uninsured vehicle,' except as provided in paragraph (e) of this provision, means:

"(A) A vehicle with respect to the ownership, maintenance or use of which there is no collectible automobile bodily injury liability insurance or bond, in at least the amounts or limits prescribed for bodily injury or death under ORS 806.070 applicable at the time of the accident with respect to any person * * * legally responsible for the use of such vehicle[.]

"* * * * *

"(e) 'Uninsured vehicle' does not include:

"(A) An insured vehicle[.]"

The pivot of plaintiffs' statutorily based challenge to the policy is the extent to which ORS 742.504 and, specifically, the exclusion of ORS 742.504(2)(e)(A), applies to UIM coverage. Obviously, ORS 742.502(4) expressly states that "[u]nderinsurance coverage *shall be subject to* ORS 742.504." (Emphasis supplied.) However, it is less obvious whether that "subject to" language means that *all* provisions of ORS 742.504 pertaining to UM coverage apply identically to UIM coverage—or, particularly, whether the statutory exclusion of the insured vehicle from the definition of *"uninsured* vehicle" necessarily precludes *UIM* coverage.

Plaintiffs acknowledge that the Supreme Court has noted the general applicability of ORS 742.504 to UIM coverage. *See Vega,* 323 Or at 295-96 n 3, 297 n 5 ("[P]ursuant to ORS 742.502(4), [ORS 742.504] is also applicable to UIM insurance."). We have made similar statements. *See, e.g., Pitchford,* 147 Or App at 15 ("ORS 742.504 * * * is expressly applicable to UIM coverage."). However, plaintiffs point to various subsections of ORS 742.504, which, they assert, logically can have no application in the UIM context. *See, e.g.,*

ORS 742.504(2)(d)(C) (regarding "phantom vehicle"). We understand plaintiffs to contend that, because certain provisions of ORS 742.504 are ostensibly inapplicable in the UIM context, *Vega's* observation that ORS 742.504 applies to UIM coverage cannot be absolute. With respect to the "insured vehicle" exclusion of ORS 742.504(2)(e)(A), plaintiffs contend that, although a vehicle cannot be both "insured" and "uninsured," that is not necessarily true of UIM coverage—*i.e.*, a vehicle can logically be both "insured" and yet "underinsured." Thus, plaintiffs reason, ORS 742.504(2)(e)(A) does not exclude an insured vehicle from UIM coverage, and the auto policy must be "conformed" under ORS 742.038 to the extent it provides otherwise.

Plaintiffs *may* be correct that the "subject to" language of ORS 742.502(4) does not render all provisions of ORS 742.504 identically applicable to both UM and UIM coverage. The legislature engrafted references to UIM onto the preexisting UM statutory scheme, *see, e.g., Windsor Ins. Co. v. Judd*, 321 Or 379, 386-88, 898 P2d 761 (1995), and, given that evolution, some "slippage" was possible. Nevertheless, ORS 742.502(4) expresses a general principle of applicability, *see Vega*, 323 Or at 295-96 n 3; *Pitchford*, 147 Or App at 15, and we see no reason why that principle does not apply, particularly, to the "insured vehicle" exclusion.

We note, moreover, that construing ORS 742.504 as plaintiffs urge would effectively circumvent and nullify the "family member" exclusion of the policy's liability coverage. As noted previously, *see* 152 Or App at 106 n 4, our Supreme Court has considered cases involving such exclusions without suggesting that they were improper or unenforceable to the extent they excluded coverage in excess of the minimum prescribed by the Financial Responsibility Law. *See, e.g., Collins*, 312 Or at 340-41. Here, plaintiffs would render that exclusion a nullity by seeking to recoup by way of UIM coverage what they are expressly denied under liability coverage.

Plaintiffs contend that that result is consistent with a legislative policy embodied in ORS 742.504, a policy they describe as "plac[ing] the injured plaintiff in the same position he would have been in if the tortfeasor had liability

insurance equal to plaintiff's UIM limits rather than minimum liability coverage of $25,000." Again, we disagree. The legislative policy plaintiffs identify is generally applicable[9] — *e.g.,* in accidents in which a negligent, underinsured driver and a UIM insured are in different vehicles, insured under different policies. However, that policy does not pertain where, as here, a party claims UIM coverage under the same policy that insured the allegedly "underinsured" vehicle. Here, any "underinsurance" resulted not from the failure of some stranger to purchase adequate liability coverage but from plaintiffs' purchase of auto coverage with a "family member" exclusion.

We thus conclude that applying the "insured vehicle" exclusion, ORS 742.504(2)(e)(A), to UIM coverage is fully consonant with the statutory scheme and, particularly, with ORS 742.502(4). Consequently, the trial court did not err in concluding that plaintiffs were not entitled to recover UIM benefits under the auto policy.

■ We turn, finally, to the third assignment of error. In that assignment, plaintiffs challenge the trial court's determination that they could not recover UIM benefits under the umbrella policy issued by defendant State Farm Fire and Casualty Company. That policy, which includes UM and UIM coverage with limits of $1,000,000, provides:

"We will pay, up to the [UM/UIM] limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an **uninsured motor vehicle**." (Emphasis in original.)

The policy defines "**uninsured motor vehicle**" to include

"1.  a land motor vehicle, the ownership, maintenance or use of which is:

"* * * * *

"b.  insured or bonded for bodily injury liability at the time of the accident, but

"* * * * *

"(2)  the limits of liability:

[9] *See generally Windsor Ins. Co. v. Judd,* 321 Or 379, 898 P2d 761 (1995).

"(a)   are less than the limits **you** carry for uninsured motor vehicle coverage under this policy[.]" (Emphasis in original.)

The umbrella coverage includes the following conditions:

"1.   You must maintain underlying limits for **uninsured motor vehicle** coverage equal to the limits listed in the **Declarations**. If these underlying limits are not maintained, this coverage will not apply.

"* * * * *

"5.   This coverage will apply in accordance with the terms and conditions of your underlying **Uninsured Motorist Coverage**."[10]

Finally, like the auto policy, the umbrella policy includes the following exception:

"An **uninsured motor vehicle** does not include a land motor vehicle:

"1.   insured under the liability coverage of this policy[.]" (Emphasis in original.)

Defendant State Farm Fire asserts, and plaintiffs do not dispute, that the 1993 Honda was insured under the liability coverage of the umbrella policy.

Plaintiffs' arguments regarding the third assignment of error generally parallel their arguments under the second assignment—*i.e.*, they assert that the "insured vehicle" exception pertains only to UM coverage and not UIM coverage. For the same reasons that we rejected those arguments with respect to the auto policy, we reject them with respect to the umbrella policy. The umbrella policy's terms expressly preclude UIM coverage of the 1993 Honda and that exclusion does not run afoul of the statutory scheme.

Finally, and consistent with the foregoing analysis, we reject, without elaboration, plaintiffs' collateral arguments that, because the auto and umbrella policies failed to clearly state "the coverage afforded by the policy * * * and the

---

[10] The underlying "Uninsured Motorist Coverage" in this case was the "uninsured motorist coverage" of the auto policy.

limits of liability," ORS 742.450(1), they should, under ORS 742.038, be construed as affording coverage of $100,000 and $1,000,000 respectively. The "family member" and "insured vehicle" exclusions are explicit both in their content and in their effect.

Affirmed.