Argued and submitted November 10, 1999, decision of Court of Appeals and judgment of circuit court reversed in part and affirmed in part and case remanded to circuit court for further proceedings April 19, 2001

Robert Gary WRIGHT,
Shari Lea Wright, and James R. Strickland,
Personal Representative of the
Estate of Geoffery Eric Wright, Deceased,
*Petitioners on Review,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
and State Farm Fire and Casualty Company,
*Respondents on Review.*

(CC 16-96-05691; CA A95110; SC S45288)

22 P3d 744

Anthony A. Allen, Salem, argued the cause and filed the brief for petitioners on review. With him on the brief was J. Michael Starr, Eugene.

William G. Wheatley, Eugene, argued the cause and filed the brief for respondents on review. With him on the brief were Kathryn S. Chase and Jaqua & Wheatley, P.C., Eugene.

Phil Goldsmith, Portland, and David Nathan Allen, of MacPherson, Gintner, Gordon & Diaz, Newport, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, Kulongoski, Leeson, and Riggs, Justices.**

GILLETTE, J.

Leeson, J., concurred in part and dissented in part, and filed an opinion.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. De Muniz, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This is an action against an insurer on a claim for damages incurred in connection with a fatal automobile accident. Plaintiffs are Robert and Shari Wright (the insureds), whose son died in the accident, and James R. Strickland, the personal representative of the son's estate. Notwithstanding higher limits stated both in the insureds' motor vehicle liability policy and their umbrella policy, the insurer, State Farm,[1] refused to make any payment beyond the $25,000 minimum liability coverage required by the Oregon financial responsibility law. State Farm based its position on the wording of the "family member/household" exclusions contained in each of the policies. The trial court ruled in favor of State Farm, and the Court of Appeals affirmed. *Wright v. State Farm Mutual Auto. Ins. Co.*, 152 Or App 101, 952 P2d 73 (1998). On review, we conclude that the family member exclusion in the motor vehicle liability policy is unenforceable and that State Farm therefore must pay the amount set out on that policy's declarations page. We also conclude that no additional coverage is available under the umbrella policy. Accordingly, we reverse in part and affirm in part the decision of the Court of Appeals.

The facts are not in dispute.[2] In 1995, Geoffery Eric Wright was riding as a passenger in a motor vehicle owned by his parents, the insureds, when the motor vehicle was involved in a collision. Geoffery was killed. The accident was caused by the negligence of the motor vehicle's driver, who also was killed in the accident. Geoffery was 22 years old and was living with his parents at the time of his death.

There is no issue whether the two State Farm policies apply to the accident; they do. Rather, the issue is

---

[1] At the time of the accident, the insureds were covered as named insureds on a motor vehicle liability policy issued by State Farm Mutual Automobile Insurance Company and on a personal liability umbrella policy issued by State Farm Fire and Casualty Company. We refer to the two insurance companies collectively as State Farm.

[2] The parties submitted the case to the trial court under ORCP 66, which permits parties to a question in controversy to submit the question to the determination of a court by presenting an agreed statement of facts, a certificate that the controversy is real and the submission made in good faith, and a request for relief. ORCP 66(A).

whether certain exclusions within the policies apply. The automobile policy contains a declarations page that provides $100,000 in liability coverage for each person and $300,000 for each accident. That policy also provides uninsured and underinsured motorist coverage, with the same limits of liability. The umbrella policy provides for personal liability coverage of $1,000,000 and also includes uninsured and underinsured motorist coverage with the same limit. Under both policies, the driver, as a permissive user of the insureds' vehicle, was an additional insured.

Geoffery's damages exceeded $100,000. The personal representative of his estate therefore made a claim under both policies. State Farm, relying on the so-called "family member/household exclusion" contained in the automobile policy, offered to pay $25,000. State Farm claimed that that exclusion, which we set out verbatim, *post*, 332 Or at 6, limits the amount payable to injured insureds and their family members to $25,000, which is the minimum liability coverage required by ORS 806.070(2)(a) for bodily injury to any one person in any one accident. State Farm denied coverage under the umbrella policy, relying, in part, on a somewhat differently worded family member/household exclusion in that policy.

In the trial court, plaintiffs argued, *inter alia*, that, if the family member/household exclusion in the automobile policy limits the amount that State Farm must pay to $25,000, then the underinsured motorist provisions of that policy entitle them to the difference between that amount and $100,000, the limit of liability set out on the declarations page. They made a similar argument with respect to the umbrella policy:   In the event that the court were to determine that the family member/household exclusion of that policy precluded coverage, they nonetheless were entitled to coverage under the underinsured motorist provision of that policy. As noted, the trial court ruled in favor of State Farm. On plaintiffs' appeal, the Court of Appeals affirmed. *Wright*, 152 Or App at 116. We allowed plaintiffs' petition for review.

■     We turn first to the issue of the coverage available under the automobile policy. The declarations page of that policy sets out the limits of liability for bodily injury and

property damage in the amount of $100,000 for each person for each accident, up to a maximum of $300,000 per accident. The declarations page further states that "[y]our policy consists of this page, any endorsements, and the policy booklet, form 9837.3." Policy form 9837.3 contains, among other things, a section entitled "When Coverage Does Not Apply." As pertinent here, that section provides:

"THERE IS NO COVERAGE:

"* * * * *

"2. FOR ANY *BODILY INJURY* TO:

"* * * * *

"c. (1) *YOU*, OR

"(2) ANY OTHER *INSURED* OR MEMBER OF AN INSURED'S *FAMILY* RESIDING IN THE *INSURED'S* HOUSEHOLD.

"TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EXCEED THE LIMITS OF LIABILITY REQUIRED BY LAW."

(Emphasis in original.) Additionally, the automobile policy includes an endorsement that provides for uninsured and underinsured motor vehicle coverage under certain circumstances.

State Farm argues that the family member/household exclusion quoted above makes the $100,000 limit of liability set out on the declarations page of the policy inapplicable in this case. It contends that the phrase, "limits of liability required by law," unambiguously refers to the minimum liability coverage of $25,000 required by the Oregon financial responsibility law, ORS 806.070(2)(a). Because Geoffery was a family member residing in the insureds' household, State Farm further argues, coverage under the policy is excluded "to the extent that" it exceeds $25,000.

Plaintiffs consistently have argued that, assuming that State Farm's interpretation of the exclusion is correct,

they nonetheless are entitled to recover, because the consequence of State Farm's liability limit argument is that plaintiffs' coverage under the automobile policy is limited to $25,000, making them "underinsured" and entitled to recover under the policy's underinsured motorist provisions. The Court of Appeals chose to dispose of the case on that ground, rejecting plaintiffs' argument.

Plaintiffs attack the reasoning of the Court of Appeals respecting its underinsured motorist analysis, arguing that the Court of Appeals failed to analyze the pertinent statutes by means of the methodology identified by this court in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We allowed review to address that issue of substantive law, but now conclude that we need not reach it, because the assumed premise for the inquiry is not well taken.

In *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 22 P3d 739 (2001), we reviewed an exclusion similar to the family member/household exclusion at issue in this case. In that case, an automobile liability policyholder was injured in a motor vehicle accident and made a claim under the policy. Like State Farm in the present case, the insurer in *North Pacific* argued that the family member exclusion in the policy reduced the amount payable to the injured insured from the amounts stated on the declarations page to the $25,000 minimum liability coverage required by ORS 806.070(2)(a). The exclusion in that case provided that there would be no coverage for injured insureds or their family members "to the extent that the limits of liability for this coverage exceed the limits of liability required by the Oregon financial responsibility law."

We held in *North Pacific* that the wording of the foregoing exclusion was ambiguous because it failed to provide proper notice to the insured that liability coverage under the policy is limited to the statutorily required minimum coverage for injured insureds and their family members. *Id.* at 29. We construed the provision against the insurer, the party who drafted the policy. Under that construction, we held that the insured was entitled to liability coverage in the amount provided on the declarations page of the policy. *Id.* at 29.

Our examination of the wording of the policy in *North Pacific* followed the paradigm for such a process set out in *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). *North Pacific*, 332 Or at 27-29. When we apply that methodology here, the same outcome is appropriate. The wording of the exclusion in the automobile policy in the present case is as obtuse, if not more so, than the wording that we construed in *North Pacific*. The reference in the exclusion to "the limits of liability required by law" does not inform a policyholder what limit, if any, is applicable in a given situation and does not even direct the policyholder to a particular body of law to find out what that limit is. Resort to the context in which the phrase is used in the exclusion, as well as to other provisions of the policy, does not clarify the matter. The exclusion remains inherently ambiguous, if not incomprehensible. As we did in *North Pacific*, we hold that the exclusion in the automobile policy is unenforceable. State Farm is required to pay the amount stated on its declarations page, *viz.*, $100,000. To the extent that the decision of the Court of Appeals is to the contrary, it is reversed.

We turn to the only remaining issue, which is whether plaintiffs are entitled to coverage under the umbrella policy. Plaintiffs contend that the uninsured motor vehicle coverage endorsement to the umbrella policy entitles them to underinsurance coverage to the extent of the difference between the coverage limits stated on the declarations page ($1,000,000) and the coverage available under the automobile policy (now $100,000).

Like the automobile policy, the umbrella policy also contains a family member/household exclusion. That exclusion is not the same as that in the automobile policy, however. The exclusion provides:

"We will not provide insurance:

"* * * * *

"10.   for **bodily injury or personal injury** to the **named insured**, spouse, or anyone within the meaning of part a. or b. of the definition of **insured**."[3]

(Boldface type in original.) In addition, the umbrella policy includes an "Uninsured Motor Vehicle Coverage" endorsement that, as pertinent here, provides:

" '**Uninsured Motor Vehicle**' means:

"1.   a land motor vehicle, the ownership, maintenance or use of which is:

"* * * * *

"b.   insured or bonded for bodily injury liability at the time of the accident, but

"* * * * *

"(2)   the limits of liability:

"(a)   are less than the limits **you** carry for uninsured motor vehicle coverage under this policy * * *.

"* * * * *

"*An* **uninsured motor vehicle** does not include a land motor vehicle:

"1.   *insured under the liability coverage of this policy * * *.*

"* * * * *

"**Coverage U—Uninsured Motor Vehicle**

"We will pay, up to the Coverage U limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of the **uninsured motor vehicle**."

(Boldface type in original; emphasis added.)

---

[3] The definition of "insured" provides:

"5.   '**insured**' means:

"* * * * *

"b.   the following residents of the **named insured's** household:

"(1)   the **named insured's relatives** * * *."

(Boldface type in original.)

State Farm contends that Geoffrey Wright was included within the definition of an "insured" under the umbrella policy and, therefore, the family member/household exclusion in that policy excludes him from coverage for his bodily injuries and death. In addition, according to State Farm, that exclusion applies to the uninsured motorist endorsement as well, thus operating to exclude injured insureds and their family members from uninsured and underinsured motorist coverage. Finally, State Farm asserts that, in any event, coverage is unavailable under the uninsured motorist coverage endorsement even without regard to any exclusion in the umbrella policy, inasmuch as that endorsement covers only uninsured and underinsured vehicles, which expressly are defined to exclude vehicles insured under the liability provisions of the policy. Therefore, because Geoffrey was killed while a passenger in an insured vehicle, plaintiffs likewise are not entitled to underinsurance coverage under the endorsement.

Plaintiffs appear to concede that the family member/household exclusion to the umbrella policy excludes coverage *under that policy* for Geoffrey's injuries and death. The gravamen of their argument is that they nonetheless are entitled to coverage under the uninsured motor vehicle coverage *endorsement* to that policy. They contend that certain wording in the endorsement clearly purports to grant coverage for named insureds and their passengers injured or killed in single vehicle collisions, but that State Farm is relying on other unintelligible and misleading wording in the endorsement to create an exemption from coverage. Plaintiffs further assert that the dispute should be resolved in their favor because, under familiar rules of insurance law, ambiguities in insurance policies are construed against the drafter. Finally, they argue that the wording that State Farm employed in its effort to reduce coverage in certain circumstances does not comply with ORS 742.450(1), which provides:

> "Every motor vehicle liability insurance policy issued for delivery in this state shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability."

Before we begin our analysis of ORS 742.450(1) and its application to the umbrella policy and endorsement at issue here, we note that, under ORS 742.468, umbrella policies generally are exempt from the statutory requirements for motor vehicle liability insurance policies. That section provides that, "[f]or purposes of statutes mandating kinds or amounts of coverage that motor vehicle liability policies must contain, [umbrella liability policies] shall not be considered motor vehicle liability policies." Plaintiffs argue that the requirements of ORS 742.450(1) that certain terms be stated explicitly in a "motor vehicle liability insurance policy" apply to the umbrella policy and its endorsements notwithstanding ORS 742.468, because those statutory requirements do not "mandat[e] kinds or amounts of insurance."[4] For purposes of this opinion, we assume (without deciding) that ORS 742.468 does not exempt the umbrella policy and its endorsements from the requirements of ORS 742.450(1).[5]

■     We turn to plaintiffs' contention that the pertinent wording of the umbrella policy is ambiguous and fails to state the coverage as required by ORS 742.450(1). All plaintiffs' arguments in that regard can be reduced to a complaint that neither the umbrella policy nor the uninsured motor vehicle endorsement to that policy expressly states, in so many words, that, in certain circumstances (such as in a case in

_____

[4] A necessary premise of plaintiffs' argument is that the umbrella policy, together with the uninsured motor vehicle coverage endorsement, constitutes a "motor vehicle liability insurance policy" for purposes of ORS 742.450(1), even if it is not such a policy for purposes of other sections of that statute. The umbrella policy, standing alone, clearly is not a "motor vehicle liability insurance policy," inasmuch as it insures against *personal* liability for damages that the policyholder is legally obligated to pay. It is arguable, however, and plaintiffs appear to assume, that the endorsement, which provides for payment to the insured for "bodily injury damages from the owner or driver of an uninsured motor vehicle," transforms the umbrella policy into a motor vehicle liability policy.

[5] In addition to their other arguments, plaintiffs also suggest for the first time in this court that, if the policy initially was issued before 1993, the year that the legislature enacted ORS 742.468, then, under *American Economy Ins. Co. v. Canamore*, 114 Or App 348, 352, 834 P2d 542, *rev den* 314 Or 727 (1992), and *Savage v. Grange Mutual Ins. Co.*, 158 Or App 86, 96, 970 P2d 695, *rev den* 329 Or 318 (1999), the umbrella policy was required under ORS 742.502 and ORS 742.504 to include underinsured motorist coverage, and that statutorily mandated coverage was required to apply to individuals in the position of plaintiffs in the present case. We do not consider that argument, because plaintiffs failed to raise it below and, in any event, they concede that the record does not establish whether the umbrella policy originally was issued before 1993.

which the injured person is a named insured or a member of a named insured's family, or in which the underinsured vehicle is an insured vehicle), the limits of liability are reduced to zero. In particular, plaintiffs argue that an ordinary policyholder would not understand that the family member/household exclusion in the umbrella policy applies in an underinsurance situation like the present because: (1) that exclusion is not restated in the endorsement; (2) other terms of the endorsement suggest that insureds and their passengers *are* covered; and (3) the endorsement should stand alone. With regard to the terms of the uninsured motor vehicle endorsement, plaintiffs argue that, because the endorsement fails to employ either the phrase "underinsured vehicle" or the phrase "underinsured motorist coverage," an ordinary policyholder would not understand that the limiting endorsement applies in an underinsurance situation at all. Finally, they argue that, by simultaneously defining an uninsured vehicle to include an *underinsured* vehicle and to exclude an *insured* vehicle, the endorsement is confusing and, therefore, ambiguous. That is so, according to plaintiffs, because, although it is obvious that a vehicle cannot be at once *un*insured and *insured*, *underinsurance* coverage comes into play only when there is some, but not enough, insurance coverage.[6]

■ We agree with plaintiffs that the family member/household exclusion in the umbrella policy, which clearly

---

[6] Plaintiffs also contend for the first time in their briefs to this court that the part of the endorsement's definition of an uninsured motor vehicle that purports to exclude "a land motor vehicle * * * insured under the liability coverage of this policy" is incomprehensible and therefore ambiguous. That is so, according to plaintiffs, because the phrase "this policy" in the foregoing exclusion clearly refers to the umbrella policy (including endorsements thereto), but the umbrella policy insures *individuals* against personal liability and does *not* insure motor vehicles. State Farm responds that the declarations page of the umbrella policy requires the holder of that policy to insure "all land motor vehicles or watercraft owned by, rented by, or regularly furnished to you," and incorporates by reference the underlying automobile policy by defining the "required underlying insurance policies" to include "Automobile Liability," which, in turn, is defined as "your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle * * *." Plaintiffs did not focus below on the phrasing of the exclusion for insured vehicles in arguing that the endorsement was ambiguous or that it did not comply with ORS 742.450(1). In our view, that argument is sufficiently distinct from the arguments that plaintiffs did raise below that plaintiffs cannot be said to have preserved the argument for consideration by this court. Accordingly, we decline to address it here.

excludes coverage for Geoffrey Wright's injuries and death, cannot be read into the uninsured motor vehicle coverage endorsement. That endorsement provides that "[t]his coverage applies to the operation of your **automobile**" and that "[w]e will pay * * * the amount which *you and your passengers are legally entitled to recover as bodily injury damages* from the owner or driver of an **uninsured motor vehicle**." (Boldface type in original; emphasis added.) The "definitions" section of the main body of the umbrella policy states that " 'you' and 'your' refer to the '**insured**' as defined." (Boldface type in original.) It is apparent from the foregoing that the essential purpose of the uninsured motor vehicle coverage endorsement is to compensate the insured (a term that is defined to include family members of the insured) for otherwise unrecoverable bodily injury damages. Yet, if State Farm were correct that the family member/household exclusion in the umbrella policy applies to the endorsement, then an insured person *never* would be entitled to uninsured motorist coverage under the umbrella policy. Such a construction would vitiate the entire uninsured motorist coverage endorsement, a result that the parties cannot have intended.

We disagree, however, with plaintiffs' contention that the endorsement either is ambiguous or fails to comply with ORS 742.450(1) to the extent that it defines an uninsured vehicle to include an underinsured vehicle but, at the same time, defines an uninsured vehicle to exclude a vehicle covered by the insured's underlying liability policy.

We first consider whether the endorsement is ambiguous. We held in *North Pacific* that a policy provision is ambiguous if it has multiple plausible meanings or if it is "not comprehensible for some reason, such as indefiniteness, erroneous usage, or form of expression." 332 Or at 26. As we explain below, we conclude that the definition of the term "uninsured motor vehicle" is not capable of multiple plausible interpretations; neither is it obscure.

As discussed, an endorsement to the umbrella policy provides uninsured motorist coverage. The declarations page to the umbrella policy lists under "COVERAGES," "COVERAGE U UNINSURED (INC UNDERINSURED) MOTOR VEHICLE." "Coverage U," in turn, provides that State Farm

will pay, up to the applicable limit, the amount the insured is "legally entitled to recover as bodily injury damages from the owner or driver of an **uninsured motor vehicle**." (Boldface type in original.) Thus, plaintiffs' entitlement to coverage under the uninsured motorist endorsement to the umbrella policy turns on whether the vehicle in which Geoffrey Wright was killed was an "uninsured motor vehicle" as defined in the endorsement.

As pertinent here, the term "uninsured motor vehicle" is defined as "a land motor vehicle * * * which is * * * insured or bonded for bodily injury liability at the time of the accident, but * * * the limits of liability * * * are less than the limits **you** carry for uninsured motor vehicle coverage under this policy." (Boldface type in original.) That wording, together with the wording of "Coverage U," plainly conveys that coverage is available when the policyholder is entitled to damages from an owner or driver of a vehicle that is insured for an amount less than the umbrella policy's liability limits, *viz.*, from an *under*insured owner or driver. The definition, though admittedly dense, is comprehensible and is capable of only one plausible interpretation, *viz.*, "uninsured" includes "underinsured."

As noted, plaintiffs have argued that, because the endorsement fails to *use* the word "underinsured," it is misleading and does not inform a policyholder adequately that the endorsement applies in an underinsurance situation. We disagree. The reference on the declarations page of the umbrella policy to "COVERAGE U UNINSURED (INC UNDERINSURED) MOTOR VEHICLE" places the policyholder on notice that the endorsement grants underinsurance as well as uninsurance coverage. Moreover, although we agree that the endorsement itself might be easier to understand if it used the word "underinsured," it is not ambiguous in the sense described in *North Pacific* merely because it uses other words to describe the same concept.

In the same vein, the exclusion from the definition of an uninsured motor vehicle of a land motor vehicle "insured under the liability coverage of this policy," when read together with the wording of "Coverage U," is unambiguous. The exclusion informs the policyholder that he or she is not

entitled to recover for bodily injury damages from the owner or driver of a vehicle insured under the underlying automobile policy. That wording neither is capable of more than one plausible interpretation, nor is it obscure. Thus, at least to this point in the analysis, the endorsement excludes any liability to plaintiffs.

■ We turn to whether the foregoing provisions fail to "state * * * the coverage afforded by the policy," including the limits of liability, as required by ORS 742.450(1). As noted, plaintiffs' contention that the endorsement does not comply with that statutory requirement is based on the fact that neither the declarations page nor the endorsement itself explicitly states that, in certain circumstances, the coverage is zero, rather than $1,000,000.

■ To "state" means "to express the particulars of[:] set forth." *Webster's Third New Int'l Dictionary*, 2228 (unabridged ed 1993). The declarations page of the umbrella policy recites that "OTHER LIMITS AND EXCLUSIONS MAY APPLY," and "YOUR POLICY CONSISTS OF THIS PAGE, ANY ENDORSEMENTS AND THE POLICY FORM. PLEASE KEEP TOGETHER." The policyholder, therefore, is on notice not to rely exclusively on the declarations page for information concerning the coverage available under the policy. Moreover, as noted, the declarations page of the umbrella policy specifically directs the insured to the endorsement, "Coverage U," for an explanation of the uninsured and underinsured motor vehicle coverage available under the policy. As discussed, we have concluded that the wording of the two provisions at issue in the endorsement is neither obscure nor capable of multiple plausible interpretations. Under those circumstances, the endorsement meets the requirement set out in ORS 742.450(1) that it "state" the coverage, *i.e.*, it has "set forth" and "express[ed] the particulars of" the pertinent coverage.

Plaintiffs in effect ask for more. They ask that all the rules that relate to a particular kind of claim such as the one that they are asserting appear together in one place in the policy. As we have explained, ORS 742.450(1) contains no such requirement. Plaintiffs point to no other authority that would support that requirement, and we are aware of none.

It follows from the foregoing that plaintiffs are not entitled to recover any amount under the underinsured motor vehicle coverage provisions of the umbrella policy. The decision of the Court of Appeals with respect to the plaintiffs' right to recover under the umbrella policy therefore is affirmed.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.

**LEESON, J.,** concurring in part and dissenting in part.

I agree with the majority that, under the family member/household exclusion in the umbrella policy, plaintiffs are not entitled to coverage. However, I disagree with the majority that plaintiffs are entitled to prevail under the automobile policy. The reason that plaintiffs prevail on their auto claim, the majority explains, is because the exclusion in their auto policy is as unintelligible as a similar family member/household exclusion in the policy at issue in *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 22 P3d 739 (2001). The majority concludes that plaintiffs in this case are entitled to prevail on the same theory, apparently because both cases are decided on the same day. The difficulty with the majority's conclusion is that it permits these plaintiffs to prevail on a theory that they did not raise below. In my view, the majority errs in reversing the Court of Appeals' decision and the trial court's judgment for a reason that plaintiffs never have advanced at any stage of this litigation.

This court has held that,

> "[g]enerally, before an appellate court may address whether a trial court committed an error in any of the particulars of the trial of a case, the adversely affected party must have preserved the alleged error in the trial court and raised the issue on appeal by an assignment of error in its opening brief."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). There is, of course, an exception to the rule

requiring preservation of error. Appellate courts may consider unpreserved errors if they are " 'errors of law apparent on the face of the record.' " *Id.* at 381 (citing ORAP 5.45(2)).

Preservation problems typically arise when a party that failed to preserve an error at trial claims error for the first time on appeal. *See, e.g., Brokenshire v. Rivas and Rivas, Ltd.,* 327 Or 119, 121, 957 P2d 157 (1998) (claim of error appeared for first time in defendant's opening brief in Court of Appeals). In this case, plaintiffs did not raise at trial the issue whether the family member/household exclusion in State Farm's policy is ambiguous under this court's methodology for construing insurance contracts. Neither did plaintiffs make that argument on appeal or on review.

At the trial court, the parties agreed to submit the case under ORCP 66. That rule provides, in part:

> "**A   Submission without action.**   Parties to a question in controversy, which might have been the subject of an action with such parties plaintiff and defendant, may submit the question to the determination of a court having subject matter jurisdiction.
>
> "A(1)   **Contents of submission.**   The written submission shall consist of an agreed statement of facts upon which the controversy depends, a certificate that the controversy is real and that the submission is made in good faith for the purpose of determining the rights of the parties, and a request for relief.
>
> "* * * * *
>
> "A(3)   **Effect of submission.**   From the moment the submission is filed, the court shall treat the controversy as if it is an action pending after a special verdict found. *The controversy shall be determined on the agreed case alone,* but the court may find facts by inference from the agreed facts."

ORCP 66 A (boldface in original; emphasis added). In their stipulation, they agreed that "the issues set forth below are the only issues in this controversy." Thereafter followed a list of four questions, two of which related to coverage under plaintiffs' State Farm auto policy:

"Query #1: Under State Farm Auto's car policy is State Farm Auto's liability limited to $25,000.00[?]

"Query #2: If the liability limits of State Farm Auto's policy are reduced from $100,000.00 to $25,000.00, is there underinsured motorist coverage of $75,000.00 available under State Farm Auto's policy for claims of the Estate of Geoffery Eric Wright and James R. Strickland, Personal Representative thereof[?]"

In their briefs to the trial court, plaintiffs argued that the exclusion in Section 1 of the auto policy, quoted in the majority opinion, 332 Or at 5-6, did not apply to the personal representative of Geoffery Wright's estate. They contended that, by the plain terms of the exclusion, "the Personal Representative's claim is not a claim brought by the named insured or any members of the insured's family residing in the insured's household."

Plaintiffs also argued that the failure of the auto policy to include the claim of a personal representative within its exclusion, and the failure "to advise their insured of the lower limit [of coverage] when applicable," violated ORS 742.450(1). That statute provides:

"Every motor vehicle liability insurance policy issued for delivery in this state shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability."

At the Court of Appeals, plaintiffs pressed two assignments of error regarding the trial court's judgment in favor of State Farm on the auto policy. In their first assignment, plaintiffs argued that both the auto and umbrella policies violated the requirements of ORS 742.450. In their second assignment, plaintiffs contended that, "[b]y *failing to provide a separate insurance section for underinsurance,* [State Farm] Auto issued a policy which is 'unintelligible, uncertain, ambiguous or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued' all in violation of ORS 742.005." (Emphasis added.)

The Court of Appeals affirmed the trial court. *Wright v. State Farm Mutual Auto. Ins. Co.*, 152 Or App 101, 952 P2d 73 (1998). On review before this court, plaintiffs argued that,

as a matter of *statutory construction*, underinsured motorist coverage is mandatory whenever a claim for injury or death arises out of the use of a motor vehicle that has effective liability insurance limits in amounts less than underinsured motorist limits. The majority does not reach that question, because it holds that the wording of the family member/household exclusion in the auto policy is so "obtuse" that, as a matter of *contract law*, the exclusion is unenforceable. 332 Or at 7-8. Plaintiffs no doubt will be relieved to learn that, after losing at the trial court and at the Court of Appeals, they have prevailed on one of their claims, but they also should be surprised by this court's rationale for reversing both courts. Each of those courts, in turn, no doubt will puzzle over why this court reverses them on a theory that plaintiffs never asked them to address. And defendant no doubt will be baffled to learn that, after prevailing at trial and on appeal, it has lost on review in this court on an issue that it never knew was in the case, and against which it had no opportunity to defend at any stage of these proceedings.

The majority, *sua sponte*, has raised the contract issue for plaintiffs and then has resolved it in their favor. The majority's rationale appears to be that, if this court decides two cases on the same day and, properly understood, the cases raise the same issue, then this court will resolve the similar issue the same way no matter how the cases were argued below. I disagree both with that rationale and the result in this case as it affects plaintiffs' claim under the auto policy.